## FEAGIN *vs.* THE COMPTROLLER.

[MANDAMUS—SHERIFF'S FEES AND ALLOWANCES.]

1. *Fees and allowances for feeding prisoners; act of December* 7, 1866, *relating to Barbour county.*—The act of December 7, 1866, entitled "an act to allow the officers of Barbour county to charge and receive fifty per cent. on the fees now allowed by law in the Code of Alabama," (Sess. Acts 105,) does not increase the compensation of the sheriff of Barbour county fifty per cent. for victualing prisoners in jail in criminal cases.

APPEAL from the Circuit Court of Montgomery.
Tried before Hon. GEORGE GOLDTHWAITE.

THIS was a motion in the court below, by the appellant, for a mandamus to M. A. Chisholm, comptroller of public accounts. The appellant, who was the sheriff and jailor of Barbour county, claimed that under the act of the legislature, approved December 7, 1866, entitled " an act to allow the officers of Barbour county to charge and receive fifty per cent. on the fees now allowed by law in the Code of Alabama," he was entitled to an increase of fifty per cent. on the fees allowed by § 4339 of the Revised Code, for feeding State prisoners. The comptroller refused to draw

his warrant on the treasurer in favor of the appellant for this increase of fifty per cent., and he applied to the court below to compel the comptroller to do so. Upon the hearing of the motion, the court refused to grant the mandamus. The appellant appealed, and assigns this ruling of the court as error.

RICE, SEMPLE & GOLDTHWAITE, for appellant.—1. As a general rule, sheriffs and other *ministerial* officers · are entitled to compensation for any service they, or either of them, may be required to perform by virtue of their respective offices.—Crocker on Sheriffs, &c., § 1094. This compensation is usually and properly denominated fees. *Fees*, and compensation to ministerial officers, are used as synonyms in our statute. In these statutes, *fees* to such officers mean the compensation allowed, under the law, to them for their respective official services. There are two kinds of these fees, or compensations. 1st. Those which are prescribed and fixed by law, before the performance of the services for which they are fixed; the services, in that class, being " common, well known, of an uniform value, and whose nature was such that a fair price could be fixed *before they were performed.*" 2d. Those which are not prescribed and fixed before performance of the services for which they are designed as a *reasonable* compensation; the services, in this class, being in *their very nature* such that no "*just average* estimate" could be "*previously* placed on their value."—*Walker v. Ham*, 2 New Hamp. R. 236; re-affirmed in *Chenault v. Walker*, 15 Ala. R. 605; see, also, Crocker on Sheriffs, &c., § 1097, and cases cited in note 5 thereto.

The statutes of this State settle it that the compensations to jailors "for victualing each white person," * * "and for victualing each free person of color," are "*fees,*" and *fees of the first class*—that is, fees prescribed and fixed by law before performance of the services.—See Pamph. Acts of 1865–6, pp. 44–45; Pamph. Acts of 1866–7, p. 105.

The act of December 15th, 1865, cited above, was the law of force as to jailor's "*fees,*" at the passage of the act of December 7, 1866, above cited. The latter act express-

ly increases "all the fees now allowed by law to be charged by county officers," fifty per cent., "so far as the county of Barbour is concerned." This fifty per cent. was refused by the comptroller, upon the ground, that the compensations to jailors "for victualing" prisoners were not "*fees*," but "*allowances*."

The comptroller got into this mistake by overlooking the fact, that both the acts above cited are *later than* the Penal Code which went into effect June 1st, 1866, and that the word "*allowance*," which occurs in that Penal Code, does not occur in these *later acts*. These *later acts* must control the case, and they settle it, that the charge "for victualing" prisoners are "*fees*." These acts make them "*fees*."

2. The statutes of 1866 and 1867, above cited, are decisive in favor of appellant; for it is certain that the legislature had the constitutional power to enact that the compensation to jailors, for victualing prisoners, should be "*fees*," even if the word "fees" never before embraced such compensation; and it is equally certain, that the legislature has so enacted. It is the plain legislative enactment, that this compensation shall be, and is to be, deemed and treated as "*fees*."

The statutes here relied on are *post bellum*. Decisions on matters arising during the war, can not control or override these *post bellum* statutes in their control over matters *arising* after the enactment of these statutes.

Many compensations to officers, which were *not fees by common* law, are, *by statute*, made fees.

If legislation, or the law-making power, càn settle anything, it has, both by what was done *during the war* and by what has been done since the war, settled this; that whatever may have been the mere common law view, the allowances fixed by statute for victualing prisoners, are "jailor's *fees*," by *our statute law*.—See "an act to increase *the fees* of jailors for victualing prisoners," approved August 27th, 1863, Pamph. Acts of 1863, p. 24; and also, the acts of 1866 and 1867, above referred to.

J. W. A. SANFORD, Attorney-General, *contra.*—1. Fee

is a common law term. Its definition is fixed and well understood. It is used to signify the compensation of officers engaged in the administration of justice.—Bac. Ab., vol. 4, p. 165-6. And when a term, which has a definite meaning at common law, is employed in a statute, it is presumed that it is used in the same sense.—*Ex parte Vincent,* 26 Ala. 145.

2. In §§ 777, 780-1-2-4-6, and 788, of the Penal Code, the term fees bears the "common law sense." But as the Code requires the sheriff to perform duties other than those peculiar to an officer engaged in the administration of justice, and for which fees, in the technical sense, could not be collected, the general assembly, in providing for his compensation, used the phrase "fees and *allowances*."—Id , § 788. But to all other officers, granted only fees. But if this word includes the compensation given to sheriffs for victualing prisoners, why was the word "allowances" inserted? If "fee" signifies all the compensation to which a sheriff is entitled, the word allowance is surplusage. But it fis a well recognized rule of construction that a statute must be so construed as to permit "no clause, sentence or word," to be "superfluous, void or insignificant."—Bac. Ab., vol. 9, p. 239-40 ; *Leversee v. Reynolds,* 13 Iowa, 310. Therefore, the word allowance must have some meaning. It does not signify the compensation the sheriff earns by arresting criminals ; by summonsing juries ; by serving subpœnas ; or by performing duties of like character. These duties are peculiar to the executive officer of the court, and by the discharge of them, he becomes entitled to *fees.* But the victualing of prisoners, the conveyance of them to the penitentiary, the removal of them from the jail of one county to another, might be done by persons other than those engaged in the administration of justice. And as the compensation for such services can not properly be called fees, the legislature provided "allowances" for it. And especially is the term applicable to the support of prisoners.

3. As the compensation for victualing prisoners is not a fee, but an allowance ; and as the act of the legislature, approved December 7th, 1866, (Acts 1866-67, p. 105,)

increase *only* the fees of the officers of Barbour county, (the "allowances" of the sheriff remaining unchanged,) the court below did not err in its refusal to grant a writ of mandamus against the appellee.

4. But if the term fees shall be construed to signify the compensation of every county officer for services performed by him, without regard to the character of the officer, or the nature of the service, then the tax assessor, the tax collector, and even the county administrator, can claim the addition of fifty per cent. to the charges now prescribed by law. The sheriff, by this construction, would be entitled to the added compensation for conveying prisoners to the penitentiary. Now, as no reason is known why this increase of fifty per cent. should be granted to the jailor for victualing prisoners; or to the tax assessor, tax collector, &c., for the performance of their duties, it is just to presume that the legislature did not intend to do so. But it purposed to confine the increase strictly to the officers engaged in the administration of justice, and as compensation for the services that are peculiar to such persons.

5. The act increasing the fees of the officers of Barbour county is a private statute, and must receive such construction as will not extend its operation beyond the obvious import of its terms.—*Threadneedle v. Lyman*, 2 Mod. 57; *Cayuga Bridge Company v. Magee*, 2 Paige, 16; *Culver v. Hayden*, 1 Ver. 357. A statute which confers privileges must be strictly construed.—9 Bac. Ab. 256.

JUDGE, J.—§ 788 of the Penal Code—which is the same as § 4339 of the Revised Code—prescribes the "*fees and allowances*" to which sheriffs are entitled in criminal cases, among which are the following:

"For victualing white prisoners in jail, to be paid by the defendant, on conviction, or by the State, if he is insolvent, or is not convicted, for each day, fifty cents."

"For victualing free person of color, to be paid in same manner as fees for white persons, for each day, forty cents."

By the act of December 7, 1866, (Sess. Acts, 105,) it is provided "that all the fees now allowed by law to be

charged by county officers, shall be increased fifty per cent., so far as the county of Barbour is concerned;" the act not applying to "sheriff's commissions for the collection of money on execution, or other legal process that may come into his hands for the collection of money."

The sole question for our determination is, whether the act last above cited increases the compensation of the sheriff of Barbour county fifty per cent. for victualing prisoners in jail in criminal cases?

The prior law, as we have seen, gave to the sheriff "*fees and allowances*" in criminal cases; while the subsequent statute refers to "*fees*" only—increases the *fees* of the sheriff, but says nothing of the *allowances*.

Is there any distinction between the two terms; or did the legislature intend to make such distinction?

It may be conceded that the word *fee* is ample enough in its signification to cover an allowance of specific compensation to a sheriff for victualing prisoners in criminal cases; but with this concession the question still recurs, what did the legislature intend by the use of the word "*allowances*," in connection with the word "*fees*?"

To answer this question, we must look at the act itself in which the terms are used.

Under the head of "fees and allowances" to sheriffs in criminal cases, many items are specified in the statute which we deem it unnecessary to mention in detail. After enumerating them all with particularity, the Code specifies in what manner they shall be collected and paid; and in providing for their collection and payment, certain of them are specified as *fees* only, viz: " *the fees* which accrue against defaulting persons, witnesses and bail;" " *the fees* which accrue on the removal of a convict to the penitentiary;" "*the fees* for services rendered in each criminal case," &c; but the claims of sheriffs for victualing prisoners are not called fees; they are designated as *accounts*; and a mode is provided for the proof and payment of " *the accounts due to sheriffs which are payable by the State.*" Thus we have a fair exposition in the act itself of the legislative intent in the use of the phrase "fees and allowances," by

33

which it appears to be reasonably clear and certain that sheriff's *accounts* for victualing prisoners do not come under the denomination of *fees*, but fall under the head of *allowances*. The word allowance means, according to Webster, "to put upon allowance, to restrain or limit to a certain quantity of provisions or drink," &c.

After providing how the accounts of sheriffs for victualing prisoners shall be proved and paid, the Code proceeds as follows: "No sheriff must be paid out of the State treasury any fee or allowance whatever, on account of any prisoner who has escaped from his custody," &c; thus keeping up the distinction between *fees* and *allowances*, and using, as we understand it, the latter in contradiction to the former term.—See Revised Code, § 4340.

We can not hold, then, that the act of December 7, 1866, increases the *allowances* of the sheriff of Barbour for victualing prisoners in criminal cases; that act is restricted in terms to *fees*—increases the *fees only*, of the county officers of said county, fifty per cent.

A contrary construction would make the act increase the compensation of the tax assessor, who is a county officer, fifty per cent.; and would make it also increase the compensation of the tax collector fifty per cent.; and would, perhaps, increase, in like proportion, the compensation of other county officers not named. We can not believe such to have been the legislative intention; and such intention would have to be clear and unambiguous before we could so hold.

We are referred to other and prior acts of the legislature—for instance, the act of August 27, 1863, p. 24—to show that the legislature has, in such acts, expressly used the term fees, as applicable to the compensation of jailors for victualing prisoners. But the intention of one legislative body in the use and application of the term, in an act passed by it, is not conclusive as to the intention of another and different legislative body in the use of the term in the passage of another and different act. True, it is proper to look at such a circumstance, in arriving at a correct interpretation of the subsequent law; but still that interpreta-

tion must be such as is demanded by the terms of the act itself, if they are clear and unambiguous.

The judgment of the circuit court is affirmed.