## STATE, EX REL. BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY, *v.* FLYNN ET AL.

[No. 19,428. Filed December 18, 1903.]

COUNTIES.—*Clerks.*—*Allowance for Preparing Bar Dockets.*—The judges of the circuit or superior courts may employ the clerk of the circuit court to prepare and arrange hand bar dockets for the use and convenience of the courts and members of the bar, and allow him a reasonable compensation therefor out of the county treasury as court expenses, and the amount so allowed him is his own, and need not be turned over to the county. *pp. 557–565.*

COUNTIES.—*Clerks.*—*Collection of Sheriff's Fees.*—*Recovery by County.*—
The State, on the relation of the board of county commissioners,
may recover from the clerk of the circuit court sheriff's fees col-
lected and retained by him. *pp. 565-570.*

SAME.—*Clerks.*—*Fees and Salaries.*—Allowances made to the clerk
by the judges of the circuit and superior courts as per diem for
attending sessions of such courts are not fees within the mean-
ing of §114 of the fee and salary law of 1895 (Acts 1895, p. 319),
to be taxed and charged by the clerk in behalf of the county, but
may be retained by the clerk as his own.  Monks and Dowling,
JJ., dissent. *pp. 571-583.*

From Tippecanoe Circuit Court; *W. C. L. Taylor*,
Judge.

Action by the State, on relation of the board of commis-
sioners of Tippecanoe county, against David H. Flynn and
others.  From a judgment for defendants, plaintiff ap-
peals. *Affirmed in part and reversed in part.*

*C. E. Thompson*, *D. E. Storms*, *J. F. Hanly* and *W. R.
Wood*, for appellant.

*G. P. Haywood*, *C. A. Burnett*, *A. L. Kumler* and *T. F.
Gaylord*, for appellees.

JORDAN, J.—This action was commenced and prosecuted
by the State, on the relation of the board of commission-
ers of Tippecanoe county, to recover against David H.
Flynn, as principal, and his co-appellees herein, as sureties,
on his official bond as clerk of the circuit court of that
county.  The amount in controversy herein being in excess
of $6,000, and as the case was pending in this court at
the time of the passage of the act of March 12, 1901 (Acts
1901, p. 565), we, under §12 of that statute, retained
jurisdiction over the appeal.  The complaint originally
consisted of five paragraphs.  The second, however, was
withdrawn, and is not involved in the appeal.  Separate
demurrers for insufficiency of facts were filed by the ap-
pellees to each paragraph of the complaint.  These demur-
rers, over the exceptions of appellant, were sustained to
each of the paragraphs, and, upon its refusal to plead

further, judgment was rendered against it upon the several demurrers.

The errors discussed and relied upon for a reversal are based upon the rulings of the court in sustaining the several demurrers. Each paragraph discloses that at the general election in 1894 David H. Flynn was elected clerk of the Tippecanoe Circuit Court in and for Tippecanoe county, State of Indiana. On the 15th day of November of that year, he, as principal, together with his codefendants, as sureties, executed to the State of Indiana his official bond as such clerk in the penal sum of $40,000, conditioned for the faithful discharge of the duties of his office, and the payment to the person or persons entitled to receive the same of "all moneys that may come into his hands as such clerk." This bond was duly approved by the board of commissioners of said county, and on the —— day of November, 1894, Flynn, having been duly qualified, entered upon the discharge of his official duties, and continued to hold said office until the 21st day of November, 1898. We shall state the material facts embraced in the several paragraphs of the complaint, and consider the same outside of their regular order.

By the third paragraph the relator sought to recover certain sheriff's fees taxed by said clerk in his office as sheriff's costs against certain litigants in causes heard and determined in the circuit and superior courts of said county. It is alleged in this paragraph that Flynn, as such clerk, after the expiration of the term as sheriff of one William A. Gaddis, whose term expired on the 21st day of August, 1895, collected and received a certain amount of costs and fees of record in his office which had been charged and taxed as sheriff's fees and costs during the time served by said Gaddis as sheriff. These fees and costs so taxed and charged it is alleged were, and still are, the property of Tippecanoe county, and ought to have been, when received, turned over by the clerk to the immediate

successor of said Gaddis, or paid by him into the county treasury, for the use and benefit of the "sheriff's fund." It is further disclosed that the clerk, after he collected and received said money as sheriff's costs, failed and refused to pay the same over to Gaddis as sheriff, and failed and refused upon demand to pay the same or any part thereof into the county treasury, but retained and wholly converted the money to his own use.

Under the fourth paragraph appellant seeks to recover a certain sum of money arising out of and received by Flynn for services performed by him during his term of office upon the orders of the circuit and superior courts, respectively, of said county, for arranging and preparing certain hand bar dockets for the use and convenience of the court and the members of its bar, and all other persons having business therein. It is shown that he prepared and arranged these dockets and made them ready to be placed in the hands of the printer for the purpose of being printed. He entered upon said hand bar dockets the title, number, and nature or character of each cause of action pending in court, inserting also therein a list of the attorneys practicing at the bar of the court, the names of the several court officers, and the rules which had been adopted for the control of the business in court. For the services in preparing these dockets, as alleged, he presented bills to the respective judges of the circuit and superior courts, which bills were from time to time allowed, and ordered to be paid to him out of the county treasury by an order of court duly entered of record. In pursuance of these orders a warrant was drawn by the county auditor, and Flynn was paid for the services so performed, in making and preparing these dockets, out of the county treasury. He failed to report such allowances as fees taxed and received by him as clerk, and failed to pay the money so collected by him back into the county treasury, but wholly converted

the money allowed by the court for these services to his own use.

The fifth paragraph of the complaint is substantially the same as the fourth. The material difference seemingly is that it proceeds upon the theory that the allowances made by the court to Flynn for his services in preparing the hand dockets in question were unlawful; or, in other words, the difference between the fourth and fifth paragraphs is that the latter alleges that Flynn claimed as such clerk to have performed the services for which he was allowed by the court. As the purpose of appellant under either of these paragraphs is to have the question determined in respect to appellees' liability on the official bond of the clerk for the failure of Flynn to account for and pay over to the county the money allowed and received by him for the services in question, we shall consider the fourth and fifth paragraphs together. Conclusions of law are averred in each of these paragraphs and likewise in the first and third paragraphs; hence under the well-settled rule of pleading, the demurrers thereto must be regarded as admitting as true only such facts as are well pleaded and not conclusions of law.

The breach assigned upon the bond and relied upon for a recovery under the first paragraph of the complaint is the failure and refusal of Flynn to account for and pay over to the county certain amounts of money arising out of allowances to him by the circuit and superior courts for services in attending by himself or a deputy, during his term of office, the sessions of these respective courts. For each day which he attended these courts by himself or deputy it appears he was allowed $2. At the close of each term of court he presented a bill for his per diem services to the respective judges thereof, and the same were allowed, and ordered by the court to be paid to him out of the county treasury. In pursuance of these orders, upon warrants issued by the county auditor, he was paid for

his per diem services, as hereinbefore stated, out of the county treasury, and has converted this money to his own use.

The contention of counsel for appellees is that the services performed by Flynn in preparing and arranging the hand bar dockets were not required of him as clerk. It is asserted that he performed such services unofficially, by virtue of the employment of the court under its order in his private, and not in his public, capacity. Counsel further contend that the mere fact that he performed the work during the time he was the incumbent of the clerk's office lends no support to the relator's claim in this action to the money in question. On the other hand, counsel for appellant insist that the services in controversy were officially performed by him as clerk of the court, and that the money received therefor from the county must be considered as arising out of fees within the provisions of the fee and salary law of 1895, and should therefore have been reported by him as such, and turned back into the county treasury; and for the conversion of the money it is claimed that this action can be maintained on his official bond. It is insisted that if the allowances made to him by the court were outside of the statute, then they were illegal, and he violated the law by accepting the money and converting it to his own use, for which he is liable on his bond.

Counsel, however, do not point to any statute which can be said to sustain or substantiate their claim that the preparation of the dockets in controversy was imposed either expressly or impliedly upon Flynn as duties pertaining to his office. In fact, we think that the statutes of this State will be searched in vain in order to discover any provision whereby the duties of preparing the dockets for the printer, as shown, is imposed upon the clerk of the circuit court. It will be observed that the work for which he was allowed money sought to be recovered was per-

formed, as charged, in preparing and arranging for the printer certain hand bar dockets which, when printed, were for the use of the court and members of the bar and all other persons having business in court, and was not for keeping or entering causes pending in the courts in any regular bar docket contemplated by statute. The services in question certainly do not fall within the provisions of §114 of the fee and salary law of 1895 (Acts 1895, p. 319) which reads as follows: "For entering the title and nature of each action in full on each docket, court docket, bar docket, numbering same, noting names of attorneys appearing therein, the date of filing and issuance of process, when returnable, sheriff's return on writ, and status of cause as to issue formed or pleadings pending, ten cents." This provision evidently contemplates or applies to the regular bar dockets required to be procured and kept in the office of the clerk by §7931 Burns 1901, §5845 Horner 1901, and has no reference whatever to hand dockets made for the temporary convenience of the court and members of the bar, etc.

By §7931, *supra,* the clerk of each circuit court is required to procure at the expense of the county "all necessary judges', appearance, bar, judgment, and execution dockets." This section applies to bar dockets to be kept in the custody of the clerk as permanent records of his office, in like manner as execution dockets and other books of record therein. We may assume that the several courts of Tippecanoe county, under the above section, were supplied at the expense of the county with the bar dockets therein contemplated, and that the clerk of the court, as a part of his official duties, made the entries therein required by law. It is asserted by counsel for appellees that the several circuit and superior courts of this State, outside of any statute, in the due administration of justice, possess the inherent power to order, when necessary for

State, *ex rel.*, *v.* Flynn.

the purpose of expediting and properly conducting the business of the court, the preparation of hand bar dockets, and to employ some one to perform such services, and may allow such person a reasonable compensation for his work, to be paid out of the county treasury as court expenses. That these courts are invested with such power, which they, in their discretion, when reasonably necessary, may exercise, is settled by the decisions of this court. This power springs from or arises out of the necessity of the particular case or occasion. *Board, etc., v. Stout,* 136 Ind. 53, and cases cited, 22 L. R. A. 398; *Board, etc., v. Gwin,* 136 Ind. 562, and cases cited, 22 L. R. A. 402.

In 8 Am. & Eng. Ency. Law (2d ed.), 28, the authors say: "Every regularly constituted court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." Possibly it may be said, however, that the power of the court in the employment of persons to perform necessary services is, since the enactment of the statute of 1899 concerning county business, subject to the regulation or restriction provided by §27 of that act. As to this question we need not and do not decide. See, however, *Turner v. Board, etc.,* 158 Ind. 166.

The official bond executed by Flynn and his sureties was conditioned, as provided by law, that he should faithfully discharge the duties of the office of clerk of the circuit court and should pay over on demand to the person or persons entitled or authorized to receive the same "all moneys that may come into his hands as such circuit court clerk by virtue of his office." The liability of appellees in this case arises *ex contractu,* and they can not be held liable beyond the letter and terms of their contract. Their obligation under the bond is *strictissimi juris,* and can not be extended by construction or implication. *Jenkins v. Lemonds,* 29 Ind. 294; *Carey v. State, ex rel.,* 34 Ind. 105;

*Scolt* v. *State, ex rel.*, 46 Ind. 203; *State* v. *Flynn*, 157 Ind. 52; *Hawkins* v. *Thomas*, 3 Ind. App. 399; Mechem, Pub. Officers, §282.

When a public officer is sued upon his official bond the liability of the obligors must, under the law, be brought clearly within that instrument, and the liability of the principal is identically the same as that of his sureties. *Bowers* v. *Fleming*, 67 Ind. 541; *Hawkins* v. *Thomas, supra; State, ex rel.*, v. *Givan*, 45 Ind. 267.

In *Carey* v. *State, ex rel., supra,* which involved the liability of the clerk on his bond for money paid into open court as a tender, this court said: "The clerk is a creature of the state Constitution, but his duties are defined only by statute. His bondsmen were presumed to know the law fixing their liability, when they executed the bond, and they have a right to its protection, whether they did or did not in fact know it. There is no law in this State rendering the sureties liable in such a case there being no law making it the duty of the clerk to receive such money."

The claim is made by counsel for appellant that if the services in preparing the dockets in controversy were not rendered by Flynn in his official capacity, and if the allowances of money made by the court in payment thereof were independent of any statute, then, and under such circumstances, the allowances were unlawful, and may be recovered by the county in a suit upon the clerk's official bond. This contention is untenable, and can not be sustained. If the court, during the time Flynn was in office, unlawfully made to him allowances out of the county treasury which he accepted and converted to his own use, then under the rule affirmed and enforced in *Board, etc.*, v. *Heaston*, 144 Ind. 583, 55 Am. St. 192, the county might, in an action against him personally, recover the money; but in such a case there would be no liability on his official bond.

*Bowers* v. *Fleming, supra.* Flynn as clerk of the Tippecanoe Circuit Court and Flynn in his own proper person as an individual are in a legal sense two separate and distinct persons, and it certainly would be absurd to assert that services performed by him individually or in his private capacity were performed by him as clerk of the circuit court. Neither the Tippecanoe Circuit Court nor the superior court of that county, in the absence of legal authority for so doing, could prescribe or fix the official duties of its clerk, and if either made him an allowance of money out of the public treasury for the performance of unofficial duties—that is to say, services or duties not imposed upon him by any law, express or implied—a liability for money so received and converted to his own use under such circumstances could not be created against his bondsmen. The bond in suit is conditioned substantially in accordance with §7928 Burns 1901, §5842 Horner 1901, and we may again assert that, in order to establish a liability thereon in this action, the money in controversy must be shown to have come into the hands of Flynn as clerk, and that his failure to pay it over to the relator as charged was a breach of the bond. It certainly may be said that preparing the hand dockets in controversy for the printer was not work of such a nature or character as no one but the clerk, as such official, was authorized to perform. The court, under the circumstances, had as much power to have employed any competent attorney at law or other person to do this work as it had to employ Flynn. *Board, etc.,* v. *Mitchell,* 131 Ind. 370, 15 L. R. A. 520. If immediate necessity had arisen for the repair of the elevator to the court room, and the court had employed him to make the necessary repairs, and allowed him therefor a reasonable compensation out of the county treasury, in reason it could not be asserted that he rendered official services in making such repairs, and must account to and pay over the money

so received to the county, by reason of the mere fact that at the time he performed the work in repairing the elevator he was the incumbent of the office of clerk.

In the case of *Board, etc., v. Mitchell, supra,* the board of commissioners of the county of Tippecanoe, under the public necessity act of 1879 (§7853 Burns 1901, §5766 Horner 1901), entered into a contract with Mitchell, while he was clerk of the circuit court of that county, to index, arrange, and preserve by boxing, etc., certain papers on file in his office. In that appeal this court, speaking through Elliott, J., in considering and affirming the right of Mitchell to recover against the county for his services, said: "If the appellee's claim is to be regarded as one for extra services as an officer, the appeal must be sustained. If the claim is for compensation for duties performed by him as clerk he can not recover. Or, again, if the order of the board is to be construed as an attempt to add new official duties and give compensation for their performance, the appellee must fail. The cases supporting the doctrine indicated are numerous, and we strictly adhere to them. [Citing cases.] The appellee's claim is founded upon a contract to perform work required by 'indispensable public necessity.' His whole right grows out of the contract. His claim is not for extra compensation, not for official services, nor for added official duties. The claim is solely and exclusively for compensation due under a contract. On that contract rests his claim. The board might certainly have made such a contract with a private individual, and if it could do this it may make such a contract with the clerk. There are, indeed, strong reasons why it is proper to make the contract with the clerk rather than with a stranger. There are instances in which in the strictest sense of the term there is an 'indispensable public necessity' for making such a contract, as, for instance, where there is a removal caused by the destruction of a court-house, or by the construction of a new one. As

the right of the appellee rests entirely upon a special contract made by the board because of the demands of 'an indispensable public necessity,' the case is not within the scope of the doctrine of the cases declaring that extra compensation can not be paid to county officers. That cases exist in which a valid contract may be made by the board of commissioners with a county officer has been adjudged."

We are of the opinion that the court, if the necessity arose, had the power to employ Flynn unofficially to prepare and arrange the hand dockets in dispute for the use and purposes of the court, and had the authority, therefore, to allow him a reasonable compensation for such services out of the county treasury as court expenses. Consequently the money allowed him under such circumstances would be his own, and he would not be required to turn it over to the county. If the allowances in question were unlawfully made by the court to him, and he received the money either in his own private capacity or under the mere color of office, then no right to recover by the county would arise on his official bond. On this point, see the authorities hereinbefore cited. Consequently, upon neither view of the case under the facts alleged in either the fourth or fifth paragraph is the relator entitled to recover, and the demurrers of appellees to each were properly sustained.

Counsel for appellees argue, in effect, that there can be no recovery by the county under the facts alleged in the third paragraph of the complaint. This contention, in our opinion, is wholly untenable. The *gravamen* of this paragraph, it will be observed, is that Flynn, as clerk, collected and received money in payment of certain fees and costs of record in his office. The official services out of which these fees and costs accrued were performed by one Gaddis as sheriff of the county. It appears that the clerk failed and refused to pay the money so received by him either to Gaddis as sheriff, or to the latter's successor

in office, or to the county, upon demand, but wholly converted such money to his own use. They advance the argument (1) that it was the duty of the successor of Gaddis as sheriff to collect and receive the uncollected fees earned by his predecessor; (2) that in the event the clerk collects them he is not required by law to pay them over to the county treasury. They therefore contend that the default of the clerk in the premises does not entitle the relator to recover upon his official bond. It is claimed that if he is liable upon his bond for the money received and converted, as shown, that the liability is created in favor of the sheriff, and not in favor of the county. It is insisted that neither §123 nor §124 of the fee and salary act of 1895 refers to any fees collected by one officer which belong to another official. Such money, when collected, counsel assert, should, under the above provisions of the salary law, be turned over to the proper officer, and he should report the amount thereof at his quarterly settlement, and pay it into the county treasury for the use of the fund to which it was appropriated under the law. It may be conceded that such method is the orderly one, in the first instance, for turning the money through the hands of the sheriff into the public treasury; but this can not avail appellees in this action. It is true that it is disclosed that after the expiration of Gaddis' term as sheriff, the clerk collected and received the money in payment of certain fees and costs earned by Gaddis as sheriff, but it further appears that after the money was so received by the clerk, that he failed to pay it over to any person entitled thereto, but wholly converted it to his own use.

An examination of some of the statutes of this State enacted prior to the fee and salary law of 1895, which impose certain duties upon the clerk of the circuit court, will be instructive in dealing with the question here involved. The clerk of the circuit court is required to draw up all judgments rendered and other proceedings of the

court, and enter them in the proper order-book or record. §§588, 1382 Burns 1901. It is made his further duty to keep in his office the following dockets: A judgment docket, in which, among other things, he must enter a statement of the amount of the judgment and costs, etc., (§591 Burns 1901), and an execution docket, in which he must enter all executions, showing the amount of the judgment upon which they were issued, interest, and costs. In this docket he enters at length the return of the sheriff upon the execution. §689 Burns 1901. The clerk is also required to keep a register of fees or fee books in which he enters all fees accruing in every case or proceeding in court, or accruing in other matters connected with his office. §7941 Burns 1901. He is also required to keep a cash-book, and must enter therein the amount of money received on all fees, including his own, as provided by §7940 Burns 1901. All processes or writs, etc., issued by the clerk to the sheriff are required to be returned by that officer to the clerk, and the fees taxed and charged by the sheriff for his services therein are indorsed upon such writs or process, and made a part of the return thereof, and are entered of record by the clerk in the proper fee books and other books in his office. In all civil actions a party recovering judgment is entitled to recover his costs laid out and expended, except, etc. §599 Burns 1901. By §1907 Burns 1901 the accused party in a criminal prosecution, if convicted, is liable for the payment of all costs unless exempt as therein provided.

We have referred to these various provisions of our statutes in order to show that thereby, in connection with the fee and salary law of 1895, a complete system is created by which the clerk is required to enter of record in his office all judgments, fees, costs, dues, and other demands arising out of any action or proceeding in any of the courts of his county of which he is clerk, or growing out of any business or matter connected with the office of clerk of

the circuit court. In order to authorize the clerks of the various courts of this State officially to receive money in the payment of all judgments, dues, and demands whatever of record in their respective offices, together with all funds ordered to be paid into court, the legislature in 1875 enacted a statute whereby such authority is expressly granted, and it is therein declared that such clerks shall be liable on their official bonds for the money so received by them. Acts 1875, p. 37, §7936 Burns 1901, §5850 Horner 1901. The words "dues and demands" as employed in this statute are sufficiently broad and comprehensive to include money received by the clerk in payment of all fees and costs of record in his office. *Henry* v. *State, ex rel.,* 98 Ind. 381; *Hammann* v. *Mink,* 99 Ind. 279.

In the latter case this court held that this act embraced costs. A judgment is an entirety, and the costs recovered by the judgment plaintiff are a part thereof, and under the rule affirmed by this court previous to the passage of the fee and salary laws of 1891 and 1895 such costs belonged to the judgment plaintiff, on the theory that he had either paid them as they accrued or was liable for the payment thereof. *Martindale* v. *Tibbetts,* 16 Ind. 200; *Church* v. *Hay,* 93 Ind. 323; *Keifer* v. *Summers,* 137 Ind. 106, and cases there cited.

The rule, however, affirmed in *Hays* v. *Boyer,* 59 Ind. 341, *Miller* v. *State, ex rel.,* 61 Ind. 503, and *Keifer* v. *Summers, supra,* whereby it is held that a judgment in favor of a party for costs is as much his own property and under his control as is the judgment recovered for the debt or damages, has been abrogated by the fee and salary laws of 1891 and 1895, at least so far as it concerns costs accruing by reason of the official services performed for litigants by the sheriff and clerk. It is only in the event that such costs have been previously paid by the judgment plaintiff that they can become his when collected.

By §122 of the salary act of 1895, it is provided that sheriffs, on behalf of their respective counties, shall, for the services performed by them, tax and charge the fees provided by law. It is further provided that "the fees and amounts so charged shall be designated 'sheriff's costs,' but they shall, in no sense, belong to or be the property of the sheriff, but they shall belong to and be the property of the county, except," etc. By virtue of this provision of the statute such costs, arising out of fees for official services performed by the sheriff for the judgment plaintiff, on recovery by the latter from his adversary, neither belong to such officer nor to the judgment plaintiff; but from the time such services are rendered they become and are the property of the county by virtue of this legislative declaration, and when the money is paid in satisfaction of any and all such costs or fees it must be turned over into the county treasury as provided by the fee and salary law of 1895. While executions may be issued upon judgments to enforce the collection thereof, including costs thereon and accruing costs, and while fee bills may issue to enforce the collection of fees, nevertheless a party liable for the payment of any judgment, costs, or fees whatever of record, in the office of clerk of the circuit court, may, without being coerced by an execution or fee bill, pay the money in satisfaction thereof to such clerk.

But it is insisted by appellees' counsel that so far as §7936, *supra,* may have, prior to the passage of the fee and salary law of 1895, authorized the clerk of the circuit court to receive fees earned by the sheriff and of record in the office of the clerk, it is to that extent repealed by the provisions of the salary law of 1895, which makes it the duty of the sheriff to collect and report his fees and turn them into the county treasury. Before the passage of the salary act it was the right of the sheriff to collect his fees, and the fact that that act expressly enjoined upon him the duty to collect his fees and pay them into the

public treasury does not in any sense change the provisions of §7936, *supra,* so as to deprive the clerk of the authority thereunder to receive money in satisfaction of any of the fees of the sheriff which are of record in his office. It is true, as we have previously conceded, that it is the duty of the clerk when he receives money in payment of sheriff's fees of record in his office to pay it over to the sheriff for the latter to dispose of as the law exacts; but if the clerk omits to discharge this duty, but converts the money to his own use, certainly, neither he, nor the sureties on his bond are in a position to deny the right of the county in an action on the bond to recover the money, since it is ultimately to be paid to the county in any event. Of course, we do not intend to affirm that it is the duty of the clerk to enforce the collection of the sheriff's fees, but what we do hold is that under the provisions of §7936, *supra,* he is authorized to receive money on all fees and costs which are of record in his office.

To recapitulate: the money in controversy, as disclosed by the third paragraph of the complaint, was, under the law, officially received by the clerk. It, as we have seen, belonged to and was the property of the county of Tippecanoe. Under the circumstances, therefore, the failure of the clerk to pay it over to either Gaddis as sheriff, or to the successor of the latter, or to the county, and in converting it to his own use as he did, was a violation of the obligation of his official bond, for which the relator can maintain this action. *Landers* v. *Fisher,* 2 Ind. App. 64, and cases cited; *Henry* v. *State, ex rel.,* 98 Ind. 381, and cases cited. The decisions in the cases of *Weisenborn* v. *People, ex rel.,* 53 Ill. App. 32, and *People, ex rel.,* v. *Barnwell,* 41 Ill. App. 617, are directly in point, and fully support our conclusion. It follows, therefore, that the court erred in sustaining the demurrers to the third paragraph.

State, *ex rel.*, *v.* Flynn.

The first paragraph of the complaint under the facts therein alleged, presents the question in respect to the right of the clerk to retain as his own, under the fee and salary law of 1895, the money allowed him by the circuit and superior courts of Tippecanoe county as a per diem for attending their sessions. This paragraph seemingly proceeds upon the theory that the per diem allowances made by the several courts of that county to the clerk for attending their sessions by himself or a deputy must be regarded as fees taxed and charged by the clerk in behalf of the county in accordance with the provisions of the aforesaid act, and that thereunder the money arising out of his services in attending the sessions of the court belonged to the county, and should have been reported by him and paid into the county treasury. And this is the contention of counsel for appellant, who insist that the compensation of the clerk of the Tippecanoe Circuit Court was limited to the annual salary, as provided and fixed by the act in question, and that the clerk thereunder was prohibited from retaining as his own any and all fees and emoluments of his office from whatever source derived.

By §114 of this law (Acts 1895, pp. 319, 342) it is provided that "for attending court in person or by deputy, the clerk *shall receive for each day* the court is actually in session $2." (Our italics.) The same section again provides that "for each day actually in attendance upon any session of the circuit, superior or criminal courts by himself or deputy to be paid out of the county treasury, $2." These two provisions may be properly read together. The section further provides that "all allowances made by the court during any term except * * * shall be at the close of each term included in one general certificate by the clerk duly attested and sealed for payment out of the county treasury."

In *Seiler* v. *State, ex rel.,* 160 Ind. 605, the question therein involved was as to whether the per diem awarded

out of the county treasury to the county auditor under the amendment of the tax statute of 1895 for serving as a member of the county board of review, was a fee which that officer, by virtue of the provisions of the fee and salary law of 1895, was required to charge and tax on behalf of the county, and, when collected, to be turned back into the county treasury. It was contended in that appeal, as it is in this, that the auditor in question was confined to the annual salary provided by the fee and salary law, and that all allowances and emoluments of the office must be reported and paid into the county treasury, under §124 of that statute. In that case, after a full consideration of the fee and salary act of 1895, this court held that the money received by the auditor for his per diem services upon the county board of review could not be regarded as fees which he was required under the law in question to turn back into the county treasury, but, upon the contrary, he was entitled to retain the money as his own. It is not necessary that we repeat all that is said in that appeal, but it is sufficient to assert that the decision in that case in respect to the construction or interpretation of the fee and salary law herein involved in respect to what constitutes a fee or fees within the intent and meaning thereof must rule the determination of the question presented by the first paragraph of the complaint. It is true that it may be said that prior to the decision in the Seiler case, *supra,* the proposition as to whether the clerk of the circuit court was entitled to hold as his own the per diem allowed him by the court for attending its sessions, under the fee and salary act in question, had not been decided either directly or indirectly by this court.

The contention of appellant's counsel that said salary act must be so read as to provide that not only fees earned by the clerk must be accounted for by that official and turned back into the county treasury, but also all emoluments of his office whatsoever received by him, except his

annual salary, must be accounted for, reported, and paid over to the county treasury for the purpose of constituting a fund for the payment of his annual salary.   Certainly no such words or terms as "fees and all emoluments of office whatever" received by the clerk can, under any reasonable interpretation or construction, be read into the statute.   Had the legislature intended to include emoluments of office other than fees, we may assume that it would have given expression to its will in this respect by the employment of apt and appropriate words and terms.   Counsel for appellant, to support their contention in this respect, cite us to *People* v. *Foster,* 133 Ill. 496, and *Legler* v. *Paine,* 147 Ind. 181.

It is true that it was held in the ·first case cited that a county sheriff under the laws of the state of Illinois was required to account for the per diem allowed him as sheriff for attending the sessions of the court.   The statute under consideration in that appeal, however, in respect to the money which the sheriff was required to account for and turn over to the public treasury was in its language, words, and terms of wide scope, and quite different in this respect from the law now under consideration.   The statute in controversy in that appeal made it the duty of the sheriff to keep in his office "a full, true and minute account of all fees and emoluments of his office earned by him of every name and character," and of all moneys received on account thereof; such money he was required to report and pay over to the public treasury.   Our legislature, however, in giving expression · to its will in regard to what should be charged and taxed by the clerk and paid by him into the county treasury to constitute a fund for the payment of his salary, was content to employ only the word "fees."

In *Legler* v. *Paine, supra,* the question in issue was the constitutional validity of the salary act of 1895.   As to whether the per diem of the clerk of the circuit court

was a fee or an allowance which was required to be turned back by him into the county treasury was not therein involved, and what was said by the writer of the opinion in that case which can be said to have any bearing on the question as now presented is clearly *obiter*.

As held and shown in the case of *Seiler* v. *State, ex rel.*, 160 Ind. 605, the words "fee or fees," at and prior to the passage of the fee and salary act of 1895, had been, by the decisions of this court, given a well-defined meaning. By the canons of law governing the construction of statutes all parts thereof are required to be construed together, and harmonized, if possible, and no such interpretation or construction is to be placed upon an act of the legislature as will lead to inconsistency or absurdity. The authorities affirm that the words and terms employed by the lawmakers in the enactment of a statute should be first considered in their literal and ordinary signification. As was said in *Seiler* v. *State, ex rel., supra:* "Words and phrases employed in the law must be considered in their literal and ordinary signification, and where technical words and phrases are used which have a peculiar and appropriate meaning, these must be understood according to their technical import, unless in so doing the intent of the legislature will be defeated." Citing many authorities.

In the case of *Board, etc.,* v. *Reissner,* 58 Ind. 260, it was held that fuel furnished by the sheriff for prisoners forms no part of the expense of boarding them and is not compensated by the allowance per diem for such boarding, nor by the sheriff's fees prescribed by law. The court in that case, in further referring to the fee and salary act of 1875, said: "The latter act makes no provisions for paying the sheriff for fuel furnished by him for the jail, but fixes his per diem compensation for boarding prisoners.    *    *    *    Section 16, in relation to sheriffs, provides that 'the sheriffs of the several counties of this State shall tax and charge the following fees

and none other, to wit,' etc.   But the claim of the sheriff
for fuel furnished for the jail is not a fee, and is not
embraced in the above provision."

In *Feagin* v. *Comptroller,* 42 Ala. 516, the statute there
in controversy prescribed the fees and allowances to which
sheriffs were entitled in criminal cases, among which it
was provided that he should be allowed for boarding white
prisoners in jail fifty cents for each day, and for boarding
colored prisoners forty cents per day.   The court held in
that appeal that the per diem allowed to the sheriff for
boarding such prisoners was not a fee.

In *Alexander* v. *Harrison,* 2 Ind. App. 47, Judge Crum-
packer, speaking for the court, said:   "The terms 'fees'
and 'costs' are often used interchangeably, as having the
same application, but, accurately speaking, the term 'fees'
is applicable to the items chargeable by law as between
the officer, or witness, and the party whom he serves; while
the term 'costs' has reference to the expenses of the liti-
gation as between litigants.   *Musser* v. *Good,* 11 Serg. &
R. (Pa.) 247."

This latter case, and *Cowdin* v. *Huff,* 10 Ind. 83, from
which we quoted in the Seiler case, *supra,* serve to dis-
close the meaning accorded to the term "fees" by the higher
courts of this State prior to the passage of the fee and
salary law in controversy.   That the clerk's per diem for
attending court can not be considered a fee within the
acceptation and meaning of that term when applied to
county officers, see *Board, etc.,* v. *Johnson,* 64 Ill. 149,
and *Knox County* v. *Christianer,* 68 Ill. 453, in each of
which it is held that a per diem allowance by statute to
county superintendents of schools could not be regarded
as fees.

It is claimed by counsel for appellant that the legis-
lature, by providing salaries for the officers, intended to
limit them to their salaries, and thereby remove all temp-
tations which formerly existed for such officials to acquire

fees by constructive services. But this argument is not of force in regard to the question presented, for the reason that the per diem of the clerk was not, under former laws, open to this mischief or evil. Under previous laws, in like manner as under the present, this compensation allowed to the clerk was not a matter which he on his own motion was authorized to charge and tax, but the court formerly, as it does under the present law, determined the number of days actually served by the officer in attending the court, and allowed him accordingly for each day's services what the law prescribed. Therefore under the former laws there was not, and is not under the law in dispute, any room or opportunity to tax and charge for constructive services in such cases.

The fee and salary law of 1891 was wholly silent as to the clerk's per diem for attending the sessions of the court. The introductory part of §114 of the act in controversy provides: "The clerks of the circuit, criminal and superior courts of this State on behalf of the county in which said courts are held, shall tax and charge upon proper books to be kept in their offices for that purpose, the fees and amounts provided by law, which amounts so taxed shall be designated as 'clerk's costs,' but they shall in no sense belong to and be the property of the clerks; but shall belong to and be the property of the county; said clerk shall tax and charge: For filing each paper, except *  *  *  five cents." Here is further enumerated other items of specific services for which the fees as prescribed are to be taxed and charged. It is contended, among other things, by counsel for appellant, that, inasmuch as the provision fixing the clerk's per diem is a part of this section, necessarily therefore it is a fee which, under the introductory provision, must be taxed and charged by the clerk on behalf of the county, as "clerk's costs" to be turned back into the county treasury. It will be observed that the provision of the section prescrib-

State, *ex rel.*, *v.* Flynn.

ing the per diem does not provide that the clerk shall tax and charge $2 for each day actually in attendance upon the court by himself or deputy, but it declares that he "shall receive" this compensation, which is to be allowed by the court out of the county treasury as part of the court expenses. It is not taxed and charged as "clerk's costs," but is allowed in like manner as are other court expenses. The particular provision provides the compensation to be allowed for each day, but the number of days actually served by the clerk is judicially determined, and the certified order or judgment of the court in the matter is the authority by which the county auditor draws his warrant on the county treasury for the payment of the amount allowed. It is only the amount of fees which the clerk is to tax and charge as "clerk's costs" upon proper books as the property of the county, and not all allowances from whatever source derived, as we shall hereinafter more fully show. Counsel insist that the phrase "fees and amounts" must be construed so as to embrace all allowances including the clerk's per diem for attending court. This contention is untenable, and would contravene the plain intent of the statute. The word "amounts," which is in conjunction or connected with "fees," is limited to fees. The face of the statute discloses that some of the fees enumerated which are to be taxed and charged by the clerk are specific, and the amount thereof does not depend upon a calculation, while the amount of others is to be ascertained and determined by a calculation. To illustrate: For making up a complete record, etc., eight cents per hundred words. Other instances may be noted where the amount of the fees is measured by the number of words, as for making up records, issuing alternative or peremptory writs of mandate, ten cents per hundred words. Other illustrations might be given, but these will serve to show what was intended by the phrase "fees and amounts."

This phrase was not first used in the act of 1895, but it will be found that it was employed in every fee and salary law enacted in this State during the past forty years and over.

Sections 114 and 122, the latter of which prescribes the fees to be taxed and charged by the sheriff, are each somewhat confused or inappropriately drafted, and embrace not only fees, but also all allowances to said officials as a compensation for expenses incurred in the performance of public services. To illustrate our meaning: By a provision in §122, the sheriff, who is ex officio the jailer of the county, is allowed a per diem of forty cents for boarding prisoners, and again it is provided that in counties where there is no sheriff's residence or jail he is to be allowed a reasonable amount for house rent and fuel. Neither of these allowances, as we have shown under the decisions of this court, can be regarded as fees. Again, by a provision of §114 the clerk is to be allowed "for going to and returning from the office of the Governor of the State to receive State ballots, for each mile necessarily traveled, five cents." To hold that these respective allowances must be taxed and charged as fees on behalf of the county and paid into the public treasury because they are contained in sections of the law along with what may be properly denominated fees would, in effect, be imputing to the legislature the inconsistency of requiring the clerks of the several counties to go to the office of the Governor and procure the official ballots at their own expense. This certainly would impose upon clerks of counties remote from the capital city the payment out of their own pockets of at least an appreciable sum of money, and to this extent their salaries would thereby be reduced. By force of the same construction the sheriff would be compelled to tax and charge as a fee his per diem for boarding prisoners in his custody, and return the money received therefor to the county treasury. These compensatory allowances arise out of or attach to

the office of clerk or sheriff, as the case may be.    If all of the provisions of the act in question are to be regarded as *ita lex scripta est,* and are not open to a construction or interpretation, as counsel for appellant insist, then it can be asserted with as much reason that the allowances to the clerk and sheriff above mentioned must be considered as compensatory fees to be charged and taxed as such and paid back by the officers. to the county, as it is to claim that the clerk's per diem which the law apparently allows to reimburse him for the expenses of deputies must be returned to the county. We may at least assume that the legislature intended to be just.    The illustrations which we have given will suffice to show that if the construction for which appellant contends—that the clerk under the law must look wholly to his salary to compensate him for all services performed and for all duties discharged as required by law—was adopted, it certainly would lead to inconsistency and absurdity, and such a construction the authorities affirm ought not to receive the sanction of the court.   The clerk, under the law of this State, is required to be at his office by himself or deputy on each business day, and to keep it open between the hours prescribed for the transaction of business.   He is not only required to be at his office, but the law exacts of him the further duty of attending the sessions of the circuit, superior, and criminal courts of his county.    In some counties where two or more of these courts exist, all may be in session at the same time. It can not be supposed that the legislature assumed that the clerk of the circuit court would be an ubiquitous person; hence that body, as we may presume, knew that these exactions of the law would necessarily compel him to incur the expense of employing and paying out of his own pocket one or more deputies in order that the requirements of the law might be fulfilled.

For many years before the passage of the act of 1895 the clerk of the circuit court, under the law, was allowed

a per diem for attending the sessions of the courts men-
tioned, and as the legislature under the law in question
has prohibited him from taxing, charging, and receiving as
his own any fees, and does not allow him a deputy, there-
fore, under the circumstances, it is not unreasonable to pre-
sume that it intended the per diem compensation partly to
aid in paying the expenses to which he was necessarily sub-
jected by the employment of a deputy or deputies.

Counsel urge that if the legislature had intended that
the per diem which it declared the clerk should receive was
not to be taxed and charged as a fee to be returned to the
county treasury, then it certainly would have expressed its
will in this respect in apt and positive language.   But ex-
perience justifies the assertion that the legislature does not
always in the enactment of a statute give a positive expres-
sion of its will in regard to every particular matter or mat-
ters therein embraced.   This is manifest, otherwise the
courts would not be so frequently invoked to construe or
interpret the intent or meaning of our laws.

The argument is further advanced that if the clerk be
permitted to retain the money arising out of his per diem
services in attending court, then his salary, by this method,
will be increased.   But this claim is no more reasonable or
true than would be the contention that the salary of the
judge of the court was in fact increased by a law allowing
him his necessary expenses incurred in traveling over his
circuit for the purpose of holding court.   The clerk of the
circuit court, as we have shown, is allowed no deputy, and
he is required to be at his office each day, and attend all
of the courts of his county when in session.   These duties
can not in reason be performed without incurring the ex-
pense of deputy hire.   Especially is this true in many of
the more populous counties of the State.   If his per diem
for attending court must be returned to the county, then his
salary, in effect, is reduced to the amount at least which he
is compelled to pay to a deputy to assist in the discharge of

public business. It would no more increase his salary than it does to allow him his mileage to compensate him for the expense incurred in going to and returning from the Governor's office to receive official ballots. Such compensatory allowances do not serve to increase the officer's salary, but simply serve to prevent it from being expended in part by the official in the performance of public business.

Of course, it must be conceded, and can not be successfully denied that the clerk, under the requirements. of the act of 1895, must charge and tax, on behalf of the county, and account to the latter as therein provided, for all fees which arise out of official services performed by him for any person or for the county or any other municipality. The mere fact that the fees which the law exacts shall be charged and taxed by the officer are to be paid by the county does not exempt him from reporting them at his quarterly settlement if collected, and returning or paying the money into the county treasury as provided by §124 of the statute in controversy. What shall be taxed by the clerks of the circuit courts under §114 as clerk's costs? The section furnishes the answer, "fees." What must be reported by the clerk at his quarterly settlement with the county auditor and paid into the treasury as provided by §124? In plain language it is declared to be "the amount of fees collected during the preceding three months." The condition upon which the amount of the clerk's quarterly salary can be paid to him in full as provided by §126 is that he has turned into the county treasury out of the fees collected an amount sufficient for that purpose. If, as provided by §127, any portion of the clerk's salary is due and unpaid at the close of his official term, and he has not collected an amount of fees sufficient to pay it, then the balance is subsequently to be paid out of the fees, when collected, which were earned by him during his term of office. By §128 it is further provided that if any officer named in the act shall tax any fee or shall charge, tax, or collect any

other fee than is specified by law he shall be fined not less than $25, to which may be added imprisonment in the county jail. An examination of the act in question fully reveals the fact that the legislature was intending to deal with the question of fees, and that the amount of the latter taxed, charged, and collected by the officer was to constitute a fund out of which his annual salary was to be paid; and it is fees and fees alone which he is prohibited from taxing and receiving for his own use. This intent of the law is clearly emphasized by §136, whereby it is expressly declared that "Nothing herein contained shall be so construed in any event as to allow any of the officers  \*  \*  \* the salaries herein provided and also the fees required to be taxed except as otherwise specified." That the legislature intended to accord to the term "fee and fees" the meaning which previously had been well defined by the decisions of our higher courts can not in reason be controverted. If any doubts could be entertained in regard to the construction of the act of 1895 and the interpretation of the term "fees" as therein used, as given in the case of *Seiler* v. *State, ex rel.*, 160 Ind. 605, certainly they would be removed by the fact that some two months after this decision the legislature, with full knowledge, as we may assume, of the construction or interpretation which this court placed upon the act in controversy, passed a supplemental statute wherein the term "fees" is again used to indicate what is required to be charged and taxed and paid into the county treasury by the clerk and sheriff respectively. Acts 1903, p. 140. This action of the legislative department is certainly, under the circumstances, significant.

Without further consideration of the question involved, we are constrained to conclude that the per diem allowances received by the clerk in this case for attending the sessions of the circuit and superior courts of his county as set out in the first paragraph are, under the law in con-

troversy, awarded to him for his own use, and therefore the relator is not entitled to recover upon this paragraph. The demurrers thereto were properly sustained.

For the error of the court in sustaining the demurrers to the third paragaph of the complaint the judgment below is reversed, and the cause is remanded.

Dowling, J., concurs in the result on the third paragraph of the complaint. Monks, J., concurs in the result as to the third, fourth, and fifth paragraphs of the complaint, and dissents as to the first.