No. 16,376.

THE BOARD OF COMMISSIONERS OF VIGO COUNTY *v.*
STOUT ET AL.

COURT.—*Place of Holding.*—*Authority of Court Over.*—*Access to.*—*Elevator, Regulation of Use of.*—*County Commissioners.*—*Duty and Powers of.*—It is the right and duty of the county commissioners to provide a suitable and convenient place for the holding of the courts of the county; and if they fail in the exercise of such right and in the discharge of such duty, the court can not, by their failure to act, or by an unwarranted act of theirs, be impeded in its own freedom of action under the constitution and laws of the State.   And where a court house was constructed with an elevator as the principal and only convenient entrance into and exit from the court room, the court may, by order, regulate the operation of the elevator to the needs and reasonable convenience of the court, and the board of

commissioners can not, in contravention of an order of the court, discontinue the use of the elevator.

SAME.—*Order of.—Collateral Attack.—Injunction.*—In such case, the order of court regulating the operation of the elevator, was not void, and could not be collaterally attacked by way of injunction.

SAME.—*Jurisdiction.—Power of a Court to Set Aside or Modify an Order of Another.*—A court has not the power, in an action, to set aside or modify the order of another court of similar jurisdiction.

From the Vigo Superior Court.

*G. W. Faris* and *S. R. Hamill*, for appellant.

*C. McNutt, J. G. McNutt, M. C. Hamill* and *L. D. Levique*, for appellees.

HOWARD, C. J.—This was a suit brought by the appellant board of county commissioners to enjoin the appellees from operating or interfering with the passenger elevator in the Vigo county court house.

A demurrer to the complaint having been overruled, the appellees answered in three paragraphs, the first being in general denial and the second and third setting up affirmative matter.

It is assigned as error that the court overruled appellant's demurrer to the affirmative paragraphs of the answer; and the sufficiency of these paragraphs is the only question presented for our decision.

In the second paragraph of the answer, it is averred, amongst other things, that the Vigo county court house is an iron and stone structure, two hundred and seven feet long by one hundred and fifty feet wide, and three stories high above the basement; that it cost four hundred and thirty thousand dollars, is built upon a public square in the city of Terre Haute, and fronts on four streets, with a public entrance from each street; that there are two stairways at the ends of the building, but no public stairway at or near the center; that in the original plan of the court house provision was made, at

a cost of ten thousand dollars, for an elevator in the center, to reach the several floors from the basement up; that the elevator is in keeping with the style, finish and fixtures of said building; that it is customary to use elevators in public buildings of the dimensions and use of said court house; that the offices of the clerk, sheriff, recorder, treasurer, auditor, and the board of county commissioners, are upon the first floor. The second floor is occupied by the circuit and superior courts, the office of the prosecuting attorney, and the law library. The main entrances to the circuit and superior courts are at the center of the building, near the elevator, but about sixty feet from the end stairways. The third floor is occupied by the grand jury, the petit jury, the court reporter, and the superintendent of the county schools; that the elevator is a great convenience to grand jurors and persons subpœnaed before them as witnesses, also to petit jurors; that it is a great convenience to judges, jurors, parties, attorneys, and witnesses, who are compelled to attend the sittings of the courts, and to those who, as a part of the public, choose to do so; that said elevator is a great convenience in carrying the records to and from the offices of the court on other floors; that in the ways aforesaid, and in many other ways, the operation of the elevator facilitates the carrying on of the business of the courts, and is the principal means of access to the Vigo Circuit Court room; that the board of commissioners, from the time the court house was opened for use, in April, 1887, ran and operated the elevator; that the person last employed by the board to operate the elevator did not run the same to suit the convenience or necessities of the circuit and superior courts; that it was frequently shut down before the courts adjourned, or so soon thereafter that persons in attendance on the courts were compelled to go down on foot, and the records used

in the courts and belonging to offices on other floors had to be carried; that the elevator frequently remained shut down after the courts had convened, so that persons attending court were compelled to use the stairways, while the records had to be carried up; that such neglect to properly operate the elevator caused those attending the courts great inconvenience and annoyance; that the Honorable David N. Taylor, judge of the Vigo Circuit Court, having frequent complaints made to him of such neglect and malfeasance of the elevator man, and himself observing the inefficiency in the operation of the elevator, and being duly advised in the premises, issued the following order:

"It is hereby ordered that the elevator running from the basement to the court room floor be run and operated in accordance with the following schedule: During all terms of court from eight A. M. until ten minutes past twelve, noon, and thereafter so long as court shall be in session, and from a quarter past one until half past five during any term of court, and at all times during court, giving persons attending thereon a reasonable time to pass down therefrom after the adjournment of same, Sundays excepted. And the clerk is ordered to certify a copy hereof to the sheriff, and the sheriff is ordered to serve the same on the person or persons in charge of and running said elevator, and upon the board of county commissioners, and make return of such service into court."

That, after the service of said order, the person in charge of the elevator failed to obey the same, and failed and neglected to operate the elevator at times when the circuit and superior courts were in session; wherefore, the circuit court directed the defendant, James W. Stout, who was then and is now the duly elected, qualified and acting sheriff of Vigo county, to take charge of the elevator and run the same according to the aforesaid sched-

ule; that the defendant, Stout, is operating the elevator under the direction and by the order of the Vigo Circuit Court; and the defendant, Lynch, is the deputy of said Stout, and is acting as such in running said elevator.

The board of commissioners also entered an order upon their records that the interests of the people of the county and a due regard for an economical administration of the affairs of the county do not require the further running of the elevator, and therefore ordered it closed.

This paragraph of the answer concludes by averring that the Vigo Circuit Court did thereupon cause the said sheriff, by himself and his said deputy, to operate the elevator for the purpose of expediting and facilitating the business of the said circuit and superior courts; that the said circuit court so continued the operation of said elevator because, in the exercise of its best judgment, it deemed it necessary and expedient in carrying on the business of the said courts, and a great public convenience; that the operation and running of said elevator is necessary in carrying on the business of the said circuit court.

The third paragraph of the answer is substantially the same as the second.

It is not seemly that a dispute such as this should have arisen between the parties concerned; we have, however, to consider the case as it comes to us. The controversy must seem trivial, but the questions involved are important.

The control of county property, and the management of county business generally, is confided by law to the commissioners of the county. In contemplation of law, in so far as the financial affairs of the county are concerned, the board of county commissioners is the county. The construction, maintenance, and custody of all county buildings, not excepting the court house, are in the

hands of the board. They provide and care for all the offices necessary for the conduct of county affairs, including court rooms, offices for the clerk and sheriff of the court, jury rooms, jail and other rooms and buildings convenient and necessary for the conduct of the business of the courts. This, of course, includes the means of access to the court, whether by doors, halls, corridors, stairways, or elevators.

But while the powers and duties of the board of county commissioners within the county are thus ample and complete, as a constituent part of the administrative department of the State government, yet it must be kept in mind that these powers and duties are entrusted to the board for certain defined purposes, and that the commissioners are trustees for the carrying out of such purposes. The commissioners may not exercise their powers arbitrarily and without regard to the trusts committed to their keeping.

The treasurer's office should be suitable for the safe keeping of the funds of the county. The records of deeds, showing title to the property of the people, should not be exposed to needless hazard. The jail should be such as to provide for the humane and safe keeping of those confined therein charged with the violation of the laws. And so for other trusts committed to the board.

Should any such trust be disregarded or abused, resort may be had to the courts by any aggrieved party, or by one authorized to act for the people at large. In case, however, the court itself is the party aggrieved, more delicate and important considerations are presented.

The court house, as the term implies, is chiefly for the use of the court; the remaining uses being subordinate, and to a great extent incidental.

Courts are an integral part of the government, and entirely independent; deriving their powers directly from

the constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the constitution or established in pursuance of the provisions of the constitution, can not be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of courts. *Little* v. *State,* 90 Ind. 338; *Smythe* v. *Boswell,* 117 Ind. 365; *Ex parte Griffiths,* 118 Ind. 83; *State, ex rel.,* v. *Noble,* 118 Ind. 350; *State, ex rel.,* v. *Hyde,* 121 Ind. 20; *Langenberg* v. *Decker,* 131 Ind. 471.

While the power of a court is essentially judicial, being the power to hear and adjudge causes, yet it has also such incidental powers as are necessary to the full and free exercise of its purely judicial functions. The court may, therefore, make such rules and regulations as are necessary to secure its own freedom of action, and to carry on its business with dignity, decorum, order, due dispatch, and convenience.

The statute, R. S. 1881, section 1317, recognizes and asserts such implied power of the court, in addition to its strictly judicial powers to make judgments, sentences, decrees, orders, injunctions, and to issue process— namely, the power "to do such other acts as may be proper to carry into effect the same;" that is, the power to do what may be necessary for the exercise of its own proper functions.

Judge Buskirk, in speaking of orders and rules of court made in pursuance of such power, says that "while they are in force, they are as binding upon the court, parties, and attorneys, as though enacted by the Legislature." Buskirk's Practice, 374, and authorities there cited.

Sections 1415 and 1416 of the same statutes more particularly recognize the power of the court to order the preparation of the court house for the reception of the court, also to make orders for necessary heating, supplying furniture, and making repairs. *Nash, Aud.,* v. *State, ex rel.,* 33 Ind. 78.

Even without statutory enactment, however, the court, as we have seen, possesses all powers necessary for the free and untrammeled exercise of its functions.

Considering, therefore, the facts concerning the Vigo county court house, as detailed in the answer, and as admitted to be true by the demurrer thereto, there can be but little doubt that the order made by the court as to the running of the elevator, was a proper exercise of the inherent powers of the court.

In the construction of the building, the elevator was made the principal, and was the only convenient, entrance into and exit from the court room. The stairways, located in a part of the building remote from the court rooms, were plainly not a commodious means of access, nor were they intended for such purpose. Considering, too, the great cost of the edifice and of the elevator itself, it would be most unreasonable that the court, its judge, the officers, jurors, attorneys, parties and witnesses, and the people generally who chose to attend upon the proceedings of the court, should be compelled to seek an entrance to so noble a seat of justice by way of obscure and distant stairways, when the county had provided a convenient and fit approach in the center of the building and near to the doors of the court room. To prevent the use of the elevator under the circumstances, appears as a perversion of the very purpose for which the court house was built.

It was not, perhaps, proper, except in case of urgent necessity, for the court to take upon itself the care and

management of the court house generally, or of any part of it; this being a duty confided by law to the county commissioners, the immediate representatives of the people. But, under the conditions as they appear by the facts set forth in the answer, the dignified and proper administration of justice required the moderate and reasonable order issued by the court. The schedule provided for in that order was only for the time when the court should be in session, and this the court had an undoubted right to ask. And when the order was disregarded by the person in charge of the elevator, the court might, as it did, direct its sheriff, by himself or deputy, to take charge of the elevator, or the court might appoint a bailiff to attend to that duty.

When the order was served upon the man in charge of the elevator and upon the board of county commissioners, it was but right and proper that they should have complied with it. It asked only that the chief purpose for which the court house had been built and the elevator erected should be carried out.

' It would appear, indeed, that the elevator was expressly built for the needs of the court. The second and third floors, to which the elevator runs, are devoted almost exclusively to the use of the court, jury, and court officers. The county officers, including the commissioners themselves, are located on the first floor; and it would seem that but for the uses of the court no elevator would have been needed in the building at all.

Yet the board of commissioners went so far as to enter an order upon their records directing the total discontinuance of the elevator. The answer states that the circuit court, in the exercise of its best judgment, deemed it necessary and expedient, in carrying on the business of the courts, that the elevator should be operated. It is further expressly alleged that the operation and running

of the elevator is necessary in carrying on the business of the circuit court. These averments alone would make the answer good.

The rule governing this case, to be deduced from what we have said and from the authorities cited, is that it was the right of the county commissioners, as it was their duty, to provide a suitable and convenient place for the holding of the courts of the county; but that if they failed in the exercise of such right and the discharge of such duty, the court can not, by their failure to act, or by any unwarranted act of theirs, be impeded in its own freedom of action under the constitution and laws of the State. It was the inherent right of the court, and it had the power, to provide a suitable court room; and if that were already provided, to secure also fit and convenient means of using such court room, including facilities for access thereto, suitable and necessary for the court itself, and in keeping with the character and plan of the building.

What we have said thus far would be also applicable if this were an appeal from the order of the court directing the sheriff to take charge of the elevator. The suit, however, was one for injunction to restrain the officers of the court from carrying out the order of the court itself.

We have here, then, not an appeal from an order of court, but a collateral attack upon such order. The court had undoubted jurisdiction of the subject-matter, the approach to its own court room; and its action could be reviewed only by appealing from its order. The order would not, in any case, be absolutely void, and hence could not be attacked collaterally.

There is this further to be said: The action was brought in the Vigo Superior Court to enjoin the carrying out of an order of the Vigo Circuit Court. One court

is thus, in effect, asked to set aside or modify the order of another court of similar jurisdiction. This can not be done. *Gregory* v. *Perdue*, 29 Ind. 66.

If the suit could, under any circumstances, be brought, it should have been brought in the circuit court. The proper procedure, however, would have been to file a petition in the Vigo Circuit Court asking to have the order complained of set aside or modified. From an adverse decision on such a request, if there should be one, an appeal might then be taken, and the reasonableness and propriety of the action of the court inquired into.

The judgment of the superior court is affirmed.

Filed Nov. 28, 189