STATE, EX REL. FOX *v.* BOARD OF COUNTY COMMISSIONERS OF CARROLL COUNTY ET AL.

[No. 24,904. Filed December 9, 1931.]

24

*Claycombe & Stump, Wood Unger* and *William C. Smith,* for appellant.

*Pollard, Cartwright & Wasson, George M. Smith* and *E. E. Pruitt,* for appellees.

TRAVIS, C. J.—This is an action by appellant for mandate to compel the appellees, the county council of Carroll County, and the members thereof, to make the necessary appropriation, and the board of county commissioners of Carroll County, and the members thereof, to allow the necessary funds, and the auditor of Carroll County to issue the necessary warrants to make the payment to the relator of his salary for the office of county school superintendent. The issue below was presented by separate and several demurrer of each of the appellees to appellant's amended complaint, because it does not state facts sufficient to state a cause of action. The demurrer was sustained and the appellant refused to plead further. Whereupon, the court made its finding "that said plaintiff should take nothing by its action, and that said plaintiff should pay the costs of this action." Judgment was rendered upon the finding. Error is assigned upon the action of the court sustaining the demurrer to the amended complaint.

The complaint alleges that the relator was elected to the office of county school superintendent by the board of trustees of the townships of Carroll County, September 1, 1921. Whereupon, he qualified as such officer and then and thereafter, until the date of bringing this

action, he was the duly elected, qualified and acting superintendent of schools of Carroll County.

September 2, 1919, a majority of the trustees of the townships of Carroll County filed their petition with the board of commissioners of Carroll County to increase the salary of the incumbent county superintendent of schools in the amount of $1,000 per year as provided by acts 1919, ch. 78, such increase in salary to take effect August 15, 1919. Upon the same date 400 or more of the resident freeholders of county of Carroll, not more than 100 of whom resided in the same township in Carroll County, filed their petition with the county commissioners that the incumbent county superintendent of schools be allowed an addition to his salary in such amount as, in the judgment of the majority of the trustees of the townships of said county, the work may justify, under the act of 1919.

Thereafter, the board of commissioners of Carroll County made its order to grant the petitions increasing the salary as petitioned and that such increase of salary begin August 15, 1919. The increase of salary so fixed by the order of the board of county commissioners, founded upon the petitions presented to the board, was paid to the incumbent county school superintendent, together with the salary as provided by statute, until the first day of September, 1921, the day upon which the relator was elected to the office of county school superintendent.

The incumbent superintendent filed with the county auditor, on or about August 1, 1920, an estimate of the costs of the maintenance of the office of county superintendent of schools, in which estimate the cost of salary for such officer was fixed at $2,400 per year. The appellee county council at its next regular meeting after the filing of this estimate, made an appropriation of $2,400 to pay such salary to such superintendent, and

that such appropriation was available for the payment of such salary to and including the salary for the month of December, 1921, but that the board of county commissioners refused to make the allowance therefor, and the appellee auditor refused to issue a warrant for the payment of such salary for the time covered, and that the salary has not been paid to the relator at the rate of $2,400 per year as provided by law.

Relator alleges further that, on or about August 1, 1921, such superintendent filed an estimate of the expenses of his office for the ensuing year, which included an estimate of his salary at $2,400 per year. Appellees, the county council, refused to make the necessary appropriation to pay the salary of the relator in the amount of $2,400 per year.

Relator alleges further that, on or about the first day of August, 1922, this relator filed an estimate with such auditor, which included an estimate of his salary at the rate of $2,400 per year, and included therewith an amount of money sufficient to pay the deficit in his salary for the years preceding, all of which estimate was rejected by such county council and that such county council, arbitrarily and unlawfully, fixed the salary of relator at the rate of $1,700 per year and made an appropriation in that sum to pay the salary of such superintendent, and that such county council refused, and still does refuse, to adopt an ordinance fixing the appropriation at such an amount as will meet the payment of the salary to which relator is entitled since the beginning of his tenure in such office and including the current year, but that such county council made appropriation for the payment of salary of the relator at the rate of $1,700 per year.

Relator avers further that, on November 12, 1923, he filed in the office of the auditor of said county an estimate of the expenses of his office, which estimate

included the deficit of salary unpaid to him since the beginning of his office and also an amount necessary to pay his salary at the rate of $2,400 per year for the next current fiscal year.

Relator avers further that, on September 1, 1921, such county council adopted an ordinance which, in effect, reduced the salary of such county superintendent of schools from the sum of $2,400 per year to the sum of $1,500 per year and that such county council made an appropriation in the amount of $1,500 per year for the payment of the salary of the relator, and that the salary of the relator thereafter for the months of September and October of 1921 were paid to, and received by, him at the rate of $125 per month.

Relator avers further that such county council, November 1, 1921, by its ordinance, increased the salary of such superintendent to the sum of $1,700 per year and that thereafter the board of county commissioners duly allowed the salary of the county superintendent of schools each month at the rate of $1,700 per year; and that monthly payments in payment of the salary as fixed by the ordinance of county council at $1,700 per year, and which was allowed by the county commissioners, has been paid each month by such auditor to the relator.

Relator avers further that the salary of the superintendent of schools as fixed aforesaid, pursuant to the act of 1919, was, during all the time herein referred to, and is now, the lawful salary of said office, and that all of the acts of the appellees and each of them, in adopting ordinances for appropriations or in making allowances for less than $2,400 per year for such salary, are unlawful, and that the attempted exercise of such power is unjust, oppressive and without warrant in law, and that, by such acts of appellees, relator has been prevented, and is now prevented, from obtaining the salary

for such office of county superintendent to which he is entitled.

Relator files with his amended complaint as an exhibit and a part of it, a copy of the estimate of amount required to pay the expenses of the office, including his salary, which was filed in the office of the auditor, November 6, 1923. Relator alleges that he does not have in his possession copies of the estimates of expenses for the operation of his office, including salary, which were filed with the auditor, August, 1921, and August, 1922, but that the originals are in the possession, care and custody of the appellee auditor of said county, and that he, relator, made demand upon such auditor for inspection of such estimates that he might file copies thereof as exhibits to his complaint, but that the auditor was unable to find such estimates, which had been filed with him.

Relator further avers that the county council is about to meet in session and that it will refuse, as it has continuously refused since the incumbency of this relator in the office of county superintendent of schools, at its next meeting, to make the appropriations necessary to pay the salary of relator as fixed by law, and, unless the court orders and directs such county council, and its members thereof, to adopt such an ordinance and make the necessary appropriations, the relator will be deprived of the compensation to which he is legally and rightfully entitled; and that the board of county commissioners and the members thereof have refused to allow, and will continue to refuse to allow, the claim of relator for his salary already earned and unpaid, and for salary to accrue hereafter for services as such superintendent unless the court orders and directs such board of county commissioners to make such allowances; and that the auditor of said county has continuously refused and will continue to refuse to sign a warrant

on the treasurer of the county for the payment of the salary already earned and to be earned by relator, unless the court orders and directs such auditor to issue such warrants; and that relator has no other adequate remedy than an action in mandate for the enforcement of his rights in the premises. The amended complaint was verified by affirmation. The exhibit hereinbefore referred to was not verified.

The necessary ultimate facts to be well pleaded in this action to support a finding for the plaintiff, and to withstand the demurrer are: (1) That the relator is the elected, qualified and acting superintendent of schools in Carroll County; (2) that the salary for such official was increased; (3) that relator has not been paid such salary for the time he has been such official; and (4) that the official authority which has the power and duty to make the appropriations of money from which such salary shall be paid has neglected and refused, and does now refuse to make such appropriations; and that the official authority which has the power and whose duty it is to allow the funds necessary to pay such salary has neglected and refused, and does now refuse to make such allowance; and that the official authority which has the power and whose duty it is to issue the orders or warrants to relator for the payment of his salary has neglected and refused, and does now refuse to issue such orders or warrants for the payment of such salary.

The court knows, as a matter of law: (1) That the official authority which has the power and the duty to make such appropriations is exclusively with the county council of Carroll County (§5876 Burns 1926, Acts 1899, ch. 154, p. 343, §15) ; (2) also, that the official authority which has the power and duty to allow the necessary funds to pay such salary is exclusively with the board of county commissioners of Carroll County (§6515

Burns 1926, Acts 1921, ch. 54, p. 131, §5) ; and (3) that the official authority which has the power and duty to issue the orders or warrants on the treasurer of the county, payable to the person entitled thereto, is exclusively with the county auditor (§11888 Burns 1926, 1 R. S. 1852 p. 150; §5883 Burns 1926, Acts 1899, ch. 154, §22). The Carroll county council, the board of commissioners of the county of Carroll, and the county auditor of Carroll County officially knew the authority and powers and limitations with which they were vested; and they, each officially knew, and were, as a matter of law, charged with official notice, that there was provided by law, a county officer, designated by law, county superintendent. (§6507 Burns 1926, Acts 1913, ch. 71, p. 160.) The county auditor specifically knew the date of the election of each incumbent of the office of county superintendent (§6507 Burns 1926, *supra)*; he specifically knew the increase of the salary of the county superintendent made by the board of commissioners, for he made, and was the keeper of, the records of the board. (§11887 Burns 1926, 1 R. S. 1852 p. 150.)

The amended complaint alleges all ultimate facts necessary, if proved, to sustain a finding for relator; from which it unerringly follows that the complaint alleges facts sufficient to state a cause of action. But, appellees' main proposition to sustain the judgment is that the increase of the salary of the county superintendent, as alleged in the amended complaint, was an illegal act by the board of commissioners, because the law (Acts 1919, ch. 78, p. 445), upon which the board of commissioners pretended to act, did not apply to the office of county superintendent of Carroll County, which county did not contain more than 77,000 inhabitants, as shown by the last (1910) preceding census. (§6400a Burns 1914, Acts 1913, ch.

45, p. 77; Acts 1919, ch. 78, p. 445.) Appellees maintain that, inasmuch as the law enacted in 1919 (Acts 1919, ch. 78, *supra*), specifically, by §2 of the act, states that the act shall be construed as supplemental to and not repealing the act which relates exclusively to counties containing more than 77,000 inhabitants, the *ipse dixit,* as stated in the act, controls, and the act, therefore, pertains to and shall be construed exclusively with the act of 1919, *supra.* If appellees' contention is sound, the action to increase the salary of the county superintendent, as alleged in the amended complaint, is illegal and void, and the salary of relator remained as fixed by law at $1,500 (Acts 1921, ch. 54, §2, §6512 Burns 1926.)

The Constitution provides for the passing of bills generally by the Legislature, and also, it provides that no act shall ever be revised or amended by mere reference to its title. (§124 Burns 1926, Constitution, Art. 4, §21.) The Constitution does not provide that the Legislature may enact an act which shall be supplemental to another law *(McCleary* v. *Babcock* [1907], 169 Ind. 228, 234, 82 N. E. 453), neither does it provide that the power of the Legislature extends to a pronounced construction of its own enactments. The question whether a statute is supplemental to another statute, or to all of the statutes which relate to the same subject, is one for judicial investigation, consideration and determination. This question is in the field of statute interpretation, and statute interpretation is to be expounded judicially.

The rule of judicial interpretation of statutes which is paramount, to which all other rules of statute interpretation are subordinate, is that a statute is to be expounded according to the intent of those who made it. If the legislative intent be that both the act passed in 1913 (Acts 1913, ch. 45) and the

act passed in 1919 (Acts 1919, ch. 78) be effective, and that each statute is limited in effect to counties containing more than 77,000 inhabitants, then there are two methods by which the salary of the county superintendent may be increased, the result of which is an absurdity. What group of 50 resident freeholders in a county, whose object is to obtain an increase in such salary, having the statutory right so to do, would resort to another equally legal procedure provided by another statute effectual to the same end, when, to act under its authority, it would be necessary to obtain a petition by 400 resident freeholders, not more than 100 of whom reside in the same township, and also another petition by a majority of the township trustees of the county? The question suggests its infallible answer.

The legislative intent, as specifically expressed by the act of 1919, is that it shall not repeal the act of 1913, which forces the question, what did the Legislature intend by the language of the act of 1919, to wit: "This act shall be construed as supplemental to" the act of 1913, *supra*. Before adopting any proposed construction of a statute, or of a passage from it, susceptible of more than one meaning, it is important to consider the effects or consequences which would result from it *(United States* v. *Fisher* [1805], 2 Cranch [U. S.] 358, 390, 22 L. Ed. 304), for they often point the real meaning of the words. It is not infrequently necessary, therefore, to limit the effect of words contained in an enactment, and sometimes to depart, not only from their primary and literal meaning, but also from the rules of grammatical construction in cases where it seems highly improbable that the words in their wide primary or grammatical meaning actually express the real intent of the Legislature. It is more reasonable to hold that the Legislature expressed its intent in any but a meticulous manner, than that a

meaning should be given to them which could not have been intended. The title to the act of 1919, *supra,* is general in its relation to the salaries of the county superintendents of schools of the state. Because the title is general, it does not follow that the enactment must be general; but, the enactment, under a general title, may be restrictive and limited; and, it may be restricted and limited, by judicial interpretation solely, whereby the act itself, interpreted by its plain letter, reduces it to an absurdity, or works an implied repeal contrary, as here, to a plainly expressed intent to the contrary, and against the rule that repeals by implication are not favored. The act of 1919, *supra,* is one of the several acts, and class of acts, that relate to the office of county superintendent of schools. The act of 1913, *supra,* related solely to an increase of the salary, applicable to counties measured by population. If the act of 1919, *supra,* be construed to be supplemental to the act of 1913, *supra,* so that both of these acts cover the entire field of counties in this state, the difficulty is obviated, in fact, it disappears. The later act supplements the earlier act for the purpose of providing a procedure by which salaries of county superintendents of schools in counties having 77,000 inhabitants, or less, may be increased, but by a different procedure; and so that it is more difficult to obtain an increase in salary in the smaller units, in which the work of such officer would not, ordinarily, be as onerous as the work might be in the larger units. A reasonable interpretation is, and we so hold, that the act of 1913, *supra,* is not repealed, either intentionally, or by implication, by the act of 1919, *supra;* and that the latter act is supplemental to the former act, from which it follows that the act of 1919, *supra,* applies to counties which have 77,000 or less, inhabitants; and relates to Carroll County, which had less than 77,000 inhabitants, according to the

United State census, last preceding the approval of the act, ch. 45, Acts 1913.

The Legislature by its act passed 1921 (Acts 1921, ch. 54, p. 131, §6516 Burns 1926) repealed the act passed 1919, *supra*, and the act passed 1913, *supra;* but, by the proviso in §2 of the act of 1921, provided it should not be construed to reduce the salary which any such officer then received. It follows that the increase in salary for this office in Carroll County was not taken away by the provisions of the statute.

Appellees maintain that the increase of salary applied solely to the predecessor of relator, and base their proposition upon the petitions for increase of salary, which petitions asked, "that Thomas W. Armstrong, county superintendent of schools, be allowed an addition to his salary," etc. (petition by 400 citizens), and that "we hereby petition the board of county commissioners of Carroll County, Indiana, to increase the salary of said Thomas W. Armstrong, county superintendent of schools of said county in the amount of $1,000 per year, as provided by the Act of 1919" (petition by the majority of trustees of the townships of Carroll County), and say that the increase of salary was "purely personal to Thomas W. Armstrong as an individual." County superintendents of schools are not hired, as contended by appellees, they are elected for specific terms of four years. (§6507 Burns 1926, Acts 1913, ch. 71, p. 160.) The salary such officer was to receive was fixed by law. The salary pertains to the official, and not to the individual in a contractual relationship.

Appellees maintain that, because relator has been paid an annual salary of $1,700 per year, $1,500 of which was fixed by statute (§6512 Burns 1926, Acts 1921, ch. 54, p. 131), and $200 had been added to the salary fixed by statute as an increase

by an ordinance adopted by the county council, he was estopped from recovering any balance of salary that might be due him as such officer. Appellees cite *Western Construction Co.* v. *Board, etc.* (1912), 178 Ind. 684, 98 N. E. 347, and other cases, to sustain the legal proposition. The cited cases rest upon contracts, and are not in point. The case of *Board, etc.,* v. *Benson* (1882), 83 Ind. 469, decides the point. Relator is entitled to his salary in full as provided by law, although he had payment in part. The county council had no power to increase the salary of relator. It had no power inherent; its power is no greater than provided by law.

An appropriation sufficient to pay the salary in full as claimed by relator for the year 1921 had been made. He was, and is, entitled to receive the balance due ▮ him through action by appellee board of county commissioners, and through action by appellee auditor. The county council had knowledge of the increase of salary which pertained to relator's office, through its own action in 1920 appropriating $2,400 to pay the salary of relator's predecessor. It was bound, as a matter of law, to know that the salary, as increased by action provided by ch. 78, Acts 1919 was not reduced by the law as amended (ch. 54, proviso in §2, Acts 1921). Appellee county council was required, as its legal duty, to make the necessary appropriation, to pay relator's salary as fixed by law (Acts 1911, ch. 94), and as increased, for the current years 1922 and 1923 (ch. 54, §5, Acts 1921, §6515 Burns 1926).

Appellees maintain that the county council was not legally required to make an appropriation at its meeting in September, 1923, for relator's salary for the ▮ current year 1924, because relator had not filed with the appellee auditor an estimate of his salary as fixed by law, if payable out of the county treas-

ury; and, that no appropriation being required, and none made for that purpose, relator is not entitled to salary for the current year 1924. The business of government cannot be made to depend upon such a legal construction of the sections of the act, "an act concerning county business," which concern the filing of estimates of funds necessary to operate the corporate divisions of the state, and of the business of the officer of this relator, in particular. The operation of the business of. government as provided by law is a public necessity.. The business of public education cannot be determined in the case at bar to be of greater or less necessity than the business of public highways, the business of raising public revenue, or of any other particular public business, but, we may, and do, determine, for the purpose of deciding this case, that the business of public education, as provided by the Constitution and statutes is equal to and not inferior to any other business of government. In a case, such as is here presented, where the necessary funds which the county council shall appropriate with which to pay the salary, which is certain and fixed in amount, and the official duty is specifically enjoined upon the county council to appropriate such necessary funds, such duty is not dependent upon any action of the school superintendent to file an estimate of the amount of his salary with the auditor, for his use in preparing the ordinance of appropriation for the consideration of and adoption by the county council. Ch. 54, §5, Acts 1921, §6515 Burns 1926; *State, ex rel.,* v. *Meeker* (1914), 182 Ind. 240, 105 N. E. 906.

Relator alleges in his amended complaint that the salary of the county superintendent, as fixed under the act of 1919, relating to salaries of county superintendents, was, during the time referred to (in the amended complaint), and is now, the lawful

salary of such officer. The amount of annual salary so fixed is pleaded as $2,400 per year. This is well pleaded, and the demurrer admits the fact. The matter of appropriation for such salary was not such that, even for consideration by the county council, it might use its own discretion in fixing the amount of appropriation. Its legal duty was to appropriate a fund sufficient for the purpose of such lawful salary. (Acts 1921, ch. 54, §5, p. 133, §6515 Burns 1926.)

OPINION ON APPELLEES' PETITION TO DISMISS APPEAL.

Appellees file their petition to dismiss the appeal for the reasons: (1) That the judgment is not a final judgment, as shown by the assignment of errors, which is: "The court erred in sustaining appellee's demurrer to appellant's amended complaint." Appellees argue to sustain their petition, that "no cause" (question) is presented for determination, because the assignment is indefinite, and does not show a final judgment against all the defendants. Their proposition depends upon the position of the apostrophe in the word "appellee's," and assert that the assignment affirmatively shows that the overruling of the demurrer related to but one of the defendants, and does not identify which one. The record shows that all defendants joined in filing a demurrer to the amended complaint, which demurrer was separate and several. The court sustained the demurrer. The ruling complained of, and presented by the record, is that which sustained the demurrer. It is plain that the placing of the apostrophe to make the word possessive singular instead of possessive plural was a clerical error, and that such was clearly not intended. There is no doubt that the intent of appellant was, and is, to refer to the action of the court, and the only action of the court, which is assigned as erroneous. The apostrophe will be considered as so

placed to make the word plural. *Gable* v. *Seiben* (1894), 137 Ind. 155, 36 N. E. 844. And (2) that "an appeal bond, naming one not a judgment debtor as appealing is not a sufficient bond for the judgment debtor taking the appeal," from which it follows in this appeal that the bond being insufficient in law, the appeal which was taken as in term, is, by force of this circumstance, an appeal in vacation; and that no notice of appeal was given. The judgment is that "plaintiff take nothing by its action and that said plaintiff pay the costs of this action." The bond recites that appellees (naming them) "recovered judgment against the said Arthur G. Fox for costs," and states in the condition of the bond, "that if the said appellant will duly prosecute his said appeal, and abide by and pay the judgment and costs which may be rendered or affirmed against *them* (appellees' italics) then this obligation is to be void. . . .

Costs in actions for mandate shall be awarded as in civil actions, wherein relators shall be liable for costs jointly with the actual parties to the action; but when the State is plaintiff, the relator (with an exception not applicable here) only shall be liable, and judgment for costs shall be rendered accordingly. Acts 1881 (Spec. Sess.) ch. 38, §813, §1251 Burns 1926; Acts 1885, ch. 102, §645 Burns 1926. The affirmative part of the judgment is for costs only, and it is a judgment against the relator, naming him, which was the only judgment the court could render, according to the conditions.

The recital in the bond that appellees recovered judgment against the relator for costs, might better have been the language of the judgment; but, no attack is made upon the form of the judgment, that it be more specific. For aught shown by the record, appellees are satisfied with the form of the judgment; and they are bound to be satisfied now, for the only forum in which

the form of the judgment might be corrected was that which rendered it.

The requirement that costs be adjudged against relator, when the finding was in favor of the defendant, first was enacted by Queen Ann in 1710 (Statutes at Large, Cap. XX, §V p. 191) concerning "rendering the proceedings upon writs of mandamus, etc.," wherein it is required, "if judgment shall be given for the defendant or defendants in such information, he or they, for whom such judgment shall be given, shall recover his or their costs therein expended against such relator or relators." This is the requirement of our statutes. §1251 Burns 1926; §645 Burns 1926.

Appellees present the point that: "An appeal bond naming one not a judgment debtor as appealing is not a sufficient bond for the judgment debtor taking the appeal;" and the next point, that: "The state of Indiana on the relation of Arthur G. Fox is not the same party as Arthur G. Fox." At common law, the writ of mandamus is, in general, a command issuing in the King's name. The writ is grounded on a suggestion, by the oath of the party injured, of his own right, and the denial of justice below. (3 Bl. Com. ch. 7, pp. *110, 111.) This was the practice here until changed by statute, whereby now the complaint and summons takes the place of the writ in circuit and superior courts. (§1244 Burns 1926.) In a prosecution for crime, which is charged by information at common law, though exhibited in the name of the King alone, yet, at the relation of some private person, the King is the nominal prosecutor. (4 Bl. Com. ch. 23,* p. 308.) In the case at bar, if Fox be the proper relator —and it is admitted that he is—he is the real party in interest, by virtue of the statute. *Greenfield Gas Co.* v. *Trees* (1905), 165 Ind. 209, 75 N. E. 2; *State, ex rel.,* v. *Vandalia R. Co.* (1915), 183 Ind. 49, 108 N. E. 97. The

state is the nominal, and the relator is the real party in suits upon official bonds. *Neal* v. *State, ex rel.* (1874), 49 Ind. 51. Ordinarily, when a relator is necessary, the relator is the real, and the state is but the nominal party. *State, ex rel.,* v. *Board, etc.* (1883), 92 Ind. 133.

It follows that there are two parties plaintiff at bar, the one but nominal, and the other the real party in interest. Both are parties plaintiff, and the designation by the word *plaintiff,* may refer to either party; but must be presumed to have to do, in a situation such as is now presented, with that plaintiff which by law is liable under an enforceable judgment. Arthur G. Fox is the relator, and a party plaintiff, the relator only is liable for the costs, hence Fox is liable for the costs. Plaintiff, used generally, where there are many, might apply to any one of them, but be so indefinite that it could not point to any one in particular. At bar, by force of the statute, the word plaintiff is not used generally, but specifically, and applies to the relator, the only party plaintiff to which the judgment could legally apply. The cost bond is sufficient in its relation to the judgment. The petition to dismiss the appeal is denied.

The decision sustaining appellees' demurrer to the amended complaint is erroneous. The cause is remanded, and it is ordered that the demurrer to the amended complaint be overruled, and for further proceedings.

Judgment reversed.