NOBLE COUNTY COUNCIL, ETC., ET AL. *v.* STATE EX REL. FIFER.

[No. 29,203. Filed April 4, 1955. Concurring Opinion fiiled April 7, 1955.]

174

*James P. Murphy,* of Fort Wayne, *Albert J. Kuster,* of Ligonier, and *Leo Rumbaugh,* of Albion, for appellants.

*Ralph W. Probst,* of Kendallville, for appellee.

ACHOR, J.—This is a civil action, brought by appellee against appellants to obtain judgment for salary and expenses as probation officer for Noble County, Indiana, and to mandate an appropriation for the payment of the amount due. Trial resulted in a judgment for $5,600 and costs against the Board of Commissioners of Noble County. The decree further directed the relator (appellee) to "prepare and submit to the Auditor and the County Council estimates for the amount of his salary and expenses, as required by §26-521, Burns' 1948 Repl., for the years 1952 and '53," and ordered the Auditor to prepare an ordinance of appropriation for said sum and to prepare and publish a regular notice of a special meeting (within 60 days) of the Noble County Council for the purpose of adopting such ordinance. The judgment ordered the members of the Noble County Council to meet pursuant to such notice and adopt said ordinance of appropria-

tion. It then ordered the Board of Commissioners and the Auditor of Noble County, pursuant thereto, to pay over to the appellee the sum of $5,600 so appropriated.

Appellee filed an amended complaint, upon which the issues were tried. Therefore, any error in rulings to pleadings addressed to the original complaint only are waived. *Kimble* v. *Jolly* (1940), 217 Ind. 698, 30 N. E. 2d 463.

The errors not waived, assigned and relied upon by appellant in this appeal are:

"3. The court erred in overruling appellants' demurrer to appellee's amended complaint, separately and severally.

"4. The court erred in overruling appellants' motion for new trial, separately and severally."

The grounds asserted in appellants' motion for new trial, and relied upon by appellants in this appeal, are:

"2. Error in the assessment of the amount of recovery, in this, that the amount is too large.

"3. The decision of the Court is not sustained by sufficient evidence.

"4. The decision of the Court is contrary to law."

The essential facts in this case are as follows: On March 5, 1951, the Judge of the Noble Circuit Court appointed appellee as probation officer for Noble County, "to serve indefinitely"; fixed his salary at $2,500 per annum, payable monthly, plus actual expenses necessarily incurred in the performance of his duty, and entered an order to that effect on the dockets of the court.

Simultaneously, on March 5, 1951, the Noble County Council, convened in a special session, appropriated out of the general fund $2,300 for the payment of salary of the probation officer for the balance of the year 1951, and the further sum of $500 as mileage for said

probation officer for the balance of the calendar year 1951.

In September 1951, the Noble County Council convened to pass upon the various requests for appropriation of the various county offices pertaining to expenditures of funds for the year 1952. At this meeting estimates pertaining to the Circuit Court of Noble County were submitted, including the annual salary and expenses of a probation officer. The council refused to appropriate the sum of $2,500 for the salary of a probation officer, as requested by the court, but did appropriate the sum of $600 to pay the expenses of appellee for the year 1952. No request or estimate was filed with the Auditor of the County Council in the year 1952 for appropriation of funds with which to pay the salary and expenses of a probation officer during the year 1953.

On May 2, 1953, appellee served upon the County Council, while in special session, a written demand that it make an appropriation with which to pay his salary and expenses during the year 1953. The session adjourned, with no action taken by the council with regard to this "demand." This suit for mandamus followed on May 6, 1953. Trial was commenced on January 28, 1954. No supplemental complaint was filed. However, evidence was admitted without objection that appellee performed his duties as probation officer under his appointment during the entire calendar years of 1952 and 1953, that he did receive the sum of $600 as expenses for his office in the calendar year of 1952, but that he did not receive any salary for that year, nor did he receive any salary or expenses for the year 1953. Evidence was also admitted, without objection, that at a regular meeting of the council in September 1953, the following resolution was adopted:

"We the members of the Noble County Council in regular session September, 1953, wish to go on record that we are opposed to appointing a full time probation officer for Noble County."

Therefore, we must consider the complaint as having been amended and supplemented so as to include all the facts in evidence which transpired during the year 1953.

Appellants rest their case upon three major contentions. They are as follows: (1) That the appropriation of funds for the salary of the probation officer, as fixed by the court, was discretionary with and not mandatory upon the county council; (2) that the County Reform Act (§§26-501, etc., Burns' 1948 Repl., Acts 1899, ch. 154, §§1, etc., p. 343), specifically provides the procedure for and payment of county funds, that therefore mandamus proceedings could not be had against the county council to require an appropriation of funds without first complying with the express terms of the Act; (3) that appellee had an adequate remedy at law, and, therefore, mandamus, being an extraordinary remedy, would not lie.

The answer to these contentions requires a careful and comprehensive consideration of both the inherent and constitutional authority of the judiciary as well as the statutes concerned with the relationship of the judicial and legislative branches of the government. The pertinent parts of the statute authorizing the appointment of a probation officer and the fixing of his salary by the court is as follows:

"The judges of the several circuit courts . . . may appoint one or more probation officers, to serve such courts, and under the direction of such judges, as the needs of such courts shall require. . . . The appointment of a probation officer shall be in writing and shall be entered upon the records

of the court making such appointment. The judge or judges of such courts appointing a probation officer, are hereby authorized to fix the compensation to be paid such officer, at not to exceed twenty-five hundred ($2,500) dollars per annum. Probation officers shall be allowed their actual expenses necessarily incurred in the performance of their duties when the same are approved by the court under which they are serving." §9-2212, Burns' 1942 Repl. (Acts 1927, ch. 210, §4, p. 594).

Notwithstanding the express provisions of §9-2212, *supra,* appellants assert that, inasmuch as the salary of the probation officer was merely fixed by the *judge,* and *not by statute,* such salary "was ever under the dominion and control of the County Council, and (that) it rested with that body whether there be a probation officer, and the amount such officer would receive for his services." In support of this position, appellants cite §§26-515, 26-517, Burns' 1948 Repl. (Acts 1899, ch. 154, §§15, 27, at p. 343), which provides:

". . . The power of making appropriations of money to be paid out of the county treasury shall be vested exclusively in such council, and, except as in this act otherwise expressly provided, no money shall be drawn from such treasury but in pursuance of appropriations so made." (§26-515.)

"No court, or division thereof, of any county, shall have power to bind such county by any contract, agreement, or in any other way, except by judgment rendered in a cause where such court has jurisdiction of the parties and subject-matter of the action, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of such court, and for the purpose for which such obligation is attempted to be incurred, and all contracts and agreements, express or implied, and all obligations of any and every sort attempted beyond such existing appropriations shall be absolutely void." (§26-527)

Also, in support of their position, appellants cite the

case of *Benton County Council* v. *State ex rel. Sparks* (1946), 224 Ind. 114, 65 N. E. 2d 116. This case involved the increase of the salary of a county superintendent by the township trustees of the county, as authorized by statute. However, the case does not support appellants' position. It merely holds that the legislature may delegate the fixing of a reasonable salary of a state official (county superintendent) to related administrative bodies, unless it is expressly provided in the Constitution that such salary be "fixed by law" (legislative enactment). In that case, the court held that the Benton County Council had no discretion in the matter and mandated it to appropriate funds with which to pay the salary fixed by the trustees of the county.

Contrary to appellants' interpretation of the Benton County case, *supra*, it, in fact, supports appellee's position herein. By clear analogy, that case is precedent for the fact that, within reasonable standards, other branches of the government may be authorized by the legislature to fix the salaries of their employees and subordinate officials, and that the county council has no discretion as to the amount of the salaries so fixed.

However, the authority of the court to appoint a probation officer, fix his salary and require payment thereof, does not rest upon mere legislative fiat. The court has inherent and constitutional authority to employ necessary personnel with which to perform its inherent and constitutional functions and to fix the salary of such personnel, within reasonable standards, and to require appropriation and payment therefor. The necessity of such authority in the courts is grounded upon the most fundamental and far-reaching considerations.

The preserving of the constitutional framework of our government against encroachment by one branch upon another is one of the prime responsibilities of our courts. Within and dependent upon this structure of constitutional government, our people are blessed by a galaxy of rights, privileges and immunities guaranteed to us by constitutional declaration. These have been amplified by a labyrinth of executive rules and regulations, legislative enactments and judicial declarations which our courts are, by inherent authority and constitutional mandate, required to preserve, construe, apply and enforce. This mandate is contained, in part, in Art. 1, §§12 and 13 of the Constitution as follows:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

"In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

These mandates necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our courts are the bulwark, the final

authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government. The general rule upon this subject has been stated as follows:

> "Apart from statute, a court of general jurisdiction, or record, or of last resort, possesses the inherent power to provide the necessary attendants and assistants as a means of conducting its business with reasonable despatch, or to provide for assistants charged with the care of its rooms or other like functions, and the court itself may determine the necessity. An inferior court cannot, however, make an appointment contrary to statutory intent." 21 C. J. S., §142, p. 219.

Upon the general subject of the separate and independent powers of the judicial, legislative and executive branches of government, this court has heretofore stated in the case of *State ex rel. Kostas* v. *Johnson* (1946), 224 Ind. 540, 546, 547, 69 N. E. 2d 592, as follows:

> "Section 1 of Art. 3 of the Constitution of Indiana reads as follows:
>
> 'The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, . . .'
>
> Section 1 of Art. 7 says that, 'The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish.'
>
> Of this section, Judge Elliott said, in *State ex rel. Hovey* v. *Noble* ((1889), 118 Ind. 350), *supra*, at p. 352:
>
> '. . . The effect of this provision is to vest in the courts the whole element of sovereignty known as the judicial, established by the Constitution and

the laws enacted under it, except in a few instances where powers of a judicial nature are expressly and specifically lodged elsewhere . . .'

In the same case at p. 355, the following words from an Illinois case are quoted with approval:

' "If there is any one proposition immutably established, I had supposed it to be, that the judiciary department is absolutely independent of the other departments of the government." '

In *Board* v. *Albright* (1907), 168 Ind. 564, 578, 81 N. E. 578, the following language is quoted from *Board etc.* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683:

'Courts are an integral part of the government, and entirely independent; deriving their powers directly from the Constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and safety of free institutions require the absolute integrity and freedom of action of courts.'

By these provisions in the Constitution the three departments of government are made equal, coordinate, and independent, *Lafayette M. & B. R. Co.* v. *Geiger* (1870), 34 Ind. 185, and no department of the state government can be controlled or embarrassed by another department of the government, unless the Constitution so ordains. *State* v. *Shumaker* (1928), 200 Ind. 716, 721, 164 N. E. 408. Any act by which the legislature attempts to hamper judicial functions or interfere with the discharge of judicial duties is unconstitutional and void. 16 C. J. S. 298; 11 Am. Jur. p. 908."

In the case of *Woods* v. *State* (1954), 233 Ind. 320, 119 N. E. 2d 558, 561, a new trial was ordered because of the intermingling of witnesses with members of the jury. The incident was the natural result of inadequate quarters in which to separate the jury. As a footnote

to that case, Judge Emmert of this court re-examined and restated the law with regard to the inherent rights, powers and duties of the court to provide suitable quarters for the court and its personnel, which we hereby quote with approval:

"We take this occasion to remind the trial courts and the profession that such courts have ample jurisdiction and authority to arrange the quarters for the jury so that there would be no opportunity for improper influences to be exerted upon the jury. The Constitution does not require that an appropriation be made before a constitutional court such as a circuit court, or a statutory court of superior jurisdiction, be authorized or empowered to provide for the reasonable and necessary operating expenses of such court. Chapter 154 of the 1899 Acts (The County Reform Act, §26-501 et seq., Burns' 1948 Replacement), and Acts amendatory thereto, cannot constitutionally prevent or limit the courts from administering justice and doing that which is necessary to operate as a court. 'The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties.' *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 498, 29 N. E. 2d 405, 407, 130 A. L. R. 1427. The efficient administration of justice, which is the duty of the courts, cannot be made to depend upon the discretion or whim of the county council or any other administrative or executive officer of county government. If the jury quarters of the Vanderburgh Circuit Court need remodeling to protect the integrity of its juries, it is the court's right as well as its duty to see that this is done, and the court has ample power and authority to enforce the payment of any costs reasonably and necessarily incurred in accomplishing this purpose. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427, supra. As was said in *Board of*

*Commissioners of Vigo County* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683, 22 L. R. A. 398:

'Courts are an integral part of the government and entirely independent, deriving their powers directly from the constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the constitution or established in pursuance of the provisions of the constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of courts. *Little* v. *State,* 90 Ind. 338; *Smythe* v. *Boswell,* 117 Ind. 365, 20 N. E. 263; *Ex parte Griffiths,* 118 Ind. 83, 20 N. E. 513 (3 L. R. A. 398) ; *State ex rel.* v. *Noble,* 118 Ind. 350, 21 N. E. 244 (4 L. R. A. 101) ; *State ex rel.* v. *Hyde,* 121 Ind. 20, 22 N. E. 644; *Langenburg* v. *Decker,* 131 Ind. 471, 31 N. E. 190 (16 L. R. A. 108). (136 Ind. at pages 58, 59, 35 N. E. page 685.)

'. . . It was the inherent right of the court, and it had the power, to provide a suitable court room, and, if that were already provided, to secure also fit and convenient means of using such court room, including facilities for access thereto, suitable and necessary for the court itself, and in keeping with the character and plan of the building.' 136 Ind. at page 62, 35 N. E. at page 686.

See also *Board of Com'rs of White County* v. *Gwin* (1894), 136 Ind. 562, 36 N. E. 237, 22 L. R. A. 402."

The same rule has been asserted by this court in cases which have involved the employment or appointment of necessary personnel with which to perform the inherent and constitutional functions of the court. In the case of *Dunn* v. *State ex rel. Corydon* (1933), 204 Ind. 390, 395, 184 N. E. 535, this court was also confronted with a mandate proceedings for payment of salary of an attache of the court appointed by the

judge. The plaintiff was a page appointed by the Marion Circuit Court without any statutory authority. In that case this court stated:

". . . The legislature has no power or authority to curtail and hamper the courts in the exercise of their lawful duties, and that the court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction and to employ the relatrix as a page in said court if it was reasonably necessary for the practical and efficient operation of its lawful and designated duties. This power in the court necessarily implies the power and authority to order paid the reasonable and necessary expenses of such assistance. *State ex rel.* v. *Flynn et al.* (1903), 161 Ind. 554, 69 N. E. 159; *Board* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683, 22 L. R. A. 398. And it then becomes the duty of the County to make the proper appropriation to meet such expense. Should the County Council refuse so to do the proper action would be, to mandate them, . . . *State, ex rel. Fox* v. *Board of County Commissioners of Carroll County et al.* (1931), 203 Ind. 23, 178 N. E. 563. . . ."

The case of *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 512, 513, 29 N. E. 2d 405, also involved payment for services of a public official (a pauper attorney) appointed by the court, whose services had not otherwise been authorized and for which no appropriation had been made. In that case this court stated:

"The conclusion seems unavoidable that it is the duty of courts to see that criminal cases are tried; that these cases cannot be legally tried unless the defendant, if he is a pauper, is provided with counsel; that attorneys cannot be compelled to serve without compensation; and therefore that, in order to conduct a legal trial, the court must have power to appoint counsel, and order that such counsel shall be compensated if necessary; and that the right to provide compensation cannot be made to

depend upon the will of the Legislature or of the county council."

We therefore conclude that notwithstanding the provisions of the County Reform Act (§26-501, etc., Burns' 1948 Repl.) *supra,* such Act was ineffectual to deny to the court its inherent and constitutional authority to appoint and require payment of such personnel as the functions of the court may require.

As stated by Judge Fansler in the case of *Knox, etc.* v. *McCormick, supra,* at pages 513, 514:

"... If §26-527, Burns' 1933, ... which denies to courts the right to make allowances unless there is a pre-existing appropriation, was intended to strike down the jurisdiction of courts to make such allowances as are necessary to the carrying out of their constitutional functions, *it is to that extent unconstitutional.*" (Our italics.)

Unless a court of record has abused its discretion, with respect to the exercise of such authority, this court will not disturb the decrees by which such authority is exercised. It cannot be seriously contended that the appointment of a probation officer and the fixing of his salary at $2,500 annually would constitute such an abuse of discretion. On the contrary, we are judicially aware of the increased demands made upon our trial courts because of the insurgence of juvenile delinquency and crime and of the increasingly difficult task of judiciously resolving these cases in today's complex society. Furthermore, the public policy in support of the appointment of such public officials and the payment of their salary has been declared by statute (§9-2212, Burns' 1942 Repl.). We therefore conclude that the court had inherent, constitutional and statutory authority to appoint a probation officer and to fix his

salary. Thereafter it became the mandatory duty of the County Council, on proper presentation, to appropriate funds for that expense.

We next consider appellants' second major contention that, conceding that the court had the right to appoint a probation officer, to fix his salary and to require appropriation therefor, mandamus was not available to appellee for the procurement of an appropriation for the salary and expenses incurred by appellee during the year 1953, for the reasons that (1) no estimate or official notice was timely filed with the County Council pursuant to §§26-516 and 26-517, *supra*, of the County Reform Act, nor (2) was there any allegation or proof that there was money available in the county treasury out of which to appropriate the salary requested.

We will dispose of the latter contention first: Was it necessary that appellee allege and prove that there were sufficient funds in the county treasury not already appropriated, with which to pay his salary before he could mandate an appropriation therefor? Appellants cite the case of *Talbott* v. *Board, etc.* (1908), 42 Ind. App. 198, 85 N. E. 376, which supports their position. However, in numerous cases reported since that time our courts have mandated county councils to appropriate money for official services performed without proof appearing in the record as to the status of the county treasury. *Knox County Council* v. *State ex rel. McCormick, supra; Pappas* v. *Baker, Judge* (1935), 209 Ind. 25, 197 N. E. 912; *Dunn* v. *State ex rel. Corydon, supra.* It occurs to us that it is unreasonable to impose this burden of proof upon a public official for whom the county council is under legal duty to provide funds with which to pay his salary and/or expenses. It is unreasonable because (1) it is

normally to be contemplated that there is money in the general fund out of which to pay such obligations; (2) the information involved is within the equal knowledge of the County Council, and (3) the County Council, and not the office holder, if unable to perform its statutory duty, should be charged with the responsibility of establishing any facts which constitute an excuse for such non-performance. Therefore, the case of *Talbott* v. *Board, supra,* is overruled, insofar as it is precedent upon this issue.

It is appellants' position that even though the Council had no discretion as to the appointment of a probation officer, or the fixing of his salary, the legislature had the authority to fix reasonable rules and regulations for the transaction of the county's business, and that such regulations offered three exclusive means by which appellee could present and recover his claim: (1) Have his claim for salary included in the Clerk's annual estimate of court expenses, as provided in §§26-516 and 517, Burns' 1948 Repl.; (2) file his claim with the Auditor for presentation to the Board of County Commissioners for its recommendation, to be followed thereafter by an appropriation by the common council for payment, or (3) suit, directly against the county as for debt.

In this case, appellee's claim for salary and expenses was filed by the Clerk in the annual 1952 estimate for the court, and although such requisition was submitted to the council, no appropriation for appellee's salary, as requested, was made. Therefore, appellee was clearly entitled to an order mandating an appropriation for his salary for the year 1952.

The question remaining is whether he was entitled to mandatory relief for his salary and expenses during the year 1953, or was he required to seek his remedy

under one of the above three alternative methods available to him? Appellants contend that mandamus was not available to appellee for the procurement of an appropriation for his salary and expenses during the year 1953, for the reason that no advance estimate, official notice or demand was filed with the County Council, either pursuant to §§26-516 and 26-517 or otherwise. Appellants rely on the fact that appellee's appointment was merely "to serve indefinitely." They assert that the council was under no duty to appropriate money in advance for the salary and expenses of a probation officer during the year 1953 in the absence of an advance notice or estimate approved by the court, indicating the court's intention to continue the office of the probation officer during that year. Appellants also contend that the demand for an appropriation by appellee himself on May 2, 1953 could not be considered sufficient to require an appropriation for salary and expenses for the entire year, inasmuch as the continuation of his office was altogether subject to the will of the court. However, a decision upon the issues presented by these contentions is not necessary. For the reasons hereinafter stated, appellants have waived any question as to those particular issues in the case.

Trial was had in 1954, *following* the expiration of the entire period for which salary and expenses are sought. Evidence was admitted without objection that appellee had filled the office during all of 1952 and 1953; that no salary was paid during that period; that appellants had formal notice of appellee's appointment and continued service during both years and that, in September 1953, following a demand by appellee, they, in effect, refused to approve appellee's appointment or

to make appropriation for his salary and expenses. It is upon the basis of these facts that a decision must rest.

It is conceded that a request should precede resort to an action for mandamus, and that under ordinary circumstances such request should be presented in the manner provided by statute. However, such methods cannot be accepted as excluding the right of a public official who has already performed the duties of his office to enforce payment for his services by mandate against other officials who, after a formal request for payment of such obligation, have failed or refused to perform their official responsibilities with respect thereto. Therefore, in the case before us, it was immaterial that such request or demand was made by appellee himself, and not by or on behalf of the court in the manner provided by statute (§§26-516, 517, *supra*).

It is equally true that a public official who has filled his office at a fixed salary is not required to file his claim for such salary with the Auditor for presentation to the county commissioners, or to resort to an action in debt against the county, as urged by appellee. His claim is not subject to reexamination or approval by the county commissioners, or to determination by a court or jury. Therefore, there is no reason why he should be required to so present or prosecute his claim. He is entitled to the emoluments of his office as a matter of right. Therefore, notwithstanding the availability of other statutory procedure for the presentation and recovery of his claim, such public official is entitled to "the extraordinary remedy of mandamus" when he is denied payment for his services because of the failure or refusal of other public officials with respect thereto. *Knox County Council* v. *State ex rel. McCormick*, 217 Ind. 493, 513, 29 N. E.

2d 405, *supra; State ex rel. Pappas* v. *Baker, Judge,* 209 Ind. 25, 197 N. E. 912, *supra; Dunn* v. *State ex rel. Corydon,* 204 Ind. 390, 184 N. E. 535, *supra.*

Appellants have not argued the sufficiency of the evidence to support that part of the judgment in the sum of $600, which apparently is related to appellee's expenses during the year 1953. We find no evidence in the record to support that part of the judgment but conclude, as evidently appellants did, that a new trial upon that aspect of the case would culminate in the same result. Since appellants have not made an issue with respect to said amount in either their brief or in their argument before this court, we will not disturb the judgment as being excessive with respect to that amount.

However, inasmuch as no duty arose on the part of appellants the Board of County Commissioners of the County of Noble, or John Singleton, Jr., Auditor, prior to the trial of this cause to perform the acts herein mandated by the trial court, and inasmuch as there is no evidence in the record to indicate that such appellants will not perform their statutory duties with respect to the payment of appellee's salary and expenses, the trial court is ordered to vacate its decree of mandate directed to said appellants. In all other respects this judgment is affirmed.

Judgment affirmed.

Henley, C. J., not participating.

Bobbitt, J., concurs with opinion.

## CONCURRING OPINION

BOBBITT, J.—It seems to me that the questions presented in this appeal might have been fully decided simply by determining the authority of the circuit court under the provisions of Acts 1927, ch. 210, §4, p. 594,

being §9-2212, Burns' 1942 Replacement. This act specifically grants to the circuit court the authority to appoint a probation officer and fix his salary at an amount not in excess of $2,500 per year. In order to make the act effective these expressed powers must be construed to carry with them the implied power to compel the county council to appropriate funds sufficient to pay such salary and expenses of the probation officer appointed pursuant to the act.

For this reason I concur in the result of the majority opinion.

NOTE.—Reported in 125 N. E. 2d 709.